**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                     :

YASSER ABBAS,                      :

          Plaintiff,         :

        - v -           : Civil Action No. 12-cv-01565 (EGS)
                                       :

FOREIGN POLICY GROUP, LLC and  :
JONATHAN SCHANZER,      :

         Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**BRIEF OF *AMICUS CURIAE* THE DISTRICT OF COLUMBIA
IN SUPPORT OF THE DISTRICT OF COLUMBIA ANTI-SLAPP ACT'S
APPLICABILITY IN FEDERAL DIVERSITY CASES**

IRVIN B. NATHAN
Attorney General for the District of Columbia

ARIEL B. LEVINSON-WALDMAN
Senior Counsel to the Attorney General

ELLEN A. EFROS
Deputy Attorney General
Public Interest Division

ANDREW J. SAINDON
Assistant Attorney General
Equity Section

**TABLE OF CONTENTS**

INTRODUCTION AND OVERVIEW .......................................................................................1

THE ANTI-SLAPP ACT..........................................................................................................4

ARGUMENT.............................................................................................................................5

A.     The District of Columbia Anti-SLAPP Act Applies In Federal Diversity Actions.............5

    I.    The Act And The Federal Rules Of Civil Procedure Can Operate Side By Side In Federal Court Without Conflict..................................................................7

        A.    Under governing precedent, a federal court sitting in diversity is bound to apply an otherwise applicable state rule unless there is an unavoidable, direct collision between a federal rule and a state rule...........7

            1.    Supreme Court precedent..............................................................7

            2.    Precedent of the Circuit .................................................................12

        B.    The Act and the Federal Rules of Civil Procedure can operate side by side ...................................................................................................14

            1.    The Act does not conflict with Rules 12 or 56 ..............................14

                a.    All three federal appellate courts to have examined whether a state anti-SLAPP statute's immunity-granting provision conflicts with Rules 12 or 56 have held that there is no conflict ......................................14

                b.    The other circuits' conclusions and reasoning in holding that state anti-SLAPP acts' immunity-granting protections do not conflict with Rules 12 or 56 are supported by the precedent of the Supreme Court and the D.C. Circuit, and should be applied to the Act...............................................................................19

                c.    The authorities cited in *3M Co. v. Boulter* do not support the conclusion that Rules 12 or 56 conflict with application of the Act in federal diversity actions .............27

            2.    The Act does not conflict with Rule 41(b)....................................32

    II.    Application Of The Act In Federal Court Serves *Erie's* Twin Aims ....................34

CONCLUSION.........................................................................................................................35

# TABLE OF AUTHORITIES[*]

**Cases**

*3M Co. v. Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), *appeal by 3M dismissed*, (No. 12-7012) (D.C. Cir. Oct. 19, 2012) (District's motion to withdraw appeal in No. 12-7017 and vacate district court decision for mootness pending)......................................................3, 21, 24, 25, 27, 28, 29, 31, 32, 35

*3M Co. v. Boulter*, Am. Mem. Op. and Order, 2012 WL 5245458, (D.D.C. Oct. 24, 2012) ........30

*A.R. v. F.C.*, 33 A.3d 403 (D.C. 2011)..................................................................................21

*Answering Service, Inc. v. Egan*, 728 F.2d 1500 (D.C. Cir. 1984)........................................12, 13

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003).............................................15, 16, 20, 31

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ...................................................................28

* *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102 (D.C. Cir. 2012) ..........................5, 6, 12, 13, 34, 35

* *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1 (1987)......................................9, 26, 27, 29

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958) .............................27, 29, 30, 31

*Callaway v. Hamilton Nat. Bank of Wash.*, 195 F.2d 556 (D.C. Cir. 1952) .....................................................................................28, 29

*Carmen v. Mayo Found.*, 1996 WL 137272 (8th Cir. 1996) ...........................................33

*Carter v. State Farm Mut. Auto. Ins.*, 808 A2d 466 (D.C. 2002) ...................................21

*Cohen v. Beneficial Indus. Loan Co.*, 337 U.S. 541 (1949)....................................7, 8, 15

* *Dean v. NBC Universal*, No. 2011 CA 006055 B, Order (D.C. Sup. Ct. June 25, 2012) ..........35

*Driscoll v. George Washington University*, 2012 WL 3900716 (D.D.C. 2012) ....................................................................................27

* *Farah v. Esquire*, 2012 WL 1970897 (D.D.C. 2012).............................................21, 22, 24, 25

*Farrall v. D.C. Amateur Athletic Union*, 153 F.2d 647 (D.C. Cir. 1946)...............................27, 29

*Gallup v. Caldwell*, 120 F.2d 90 (3d Cir. 1941) ..........................................................28

* *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996)..................................................................................5, 8

*Gaylord Entm't Co. v. Thompson*, 958 P.2d 128 (Okla. 1998)......................................21

* *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) .........................17, 18, 19, 20, 23, 24, 25, 27, 34

*Hanna v. Plumer*, 380 U.S. 460 (1965) ...............................................5, 6, 9, 11, 25, 34

*Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164 (5th Cir. 2009)................................................................................16, 19, 20

---

[*]     Pursuant to LCvR 7(a), counsel has placed asterisks next to those authorities on which the District of Columbia chiefly relies.

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ........................................................16, 31

*Leimer v. State Mut. Life Assurance Co.*, 108 F.2d 302 (8th Cir. 1940) .................................27, 28

*Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171
    (9th Cir. 2011).......................................................................................................30

*Marks v. United States*, 430 U.S. 188 (1977) ................................................................38

*Metabolife Int'l v Wornick*, 264 F.3d 832 (9th Cir. 2001)...................................27, 31, 32

*Nat'l War Labor Bd. v. Montgomery Ward & Co.*, 144 F.2d 528 (D.C. Cir. 1944)................27, 29

*N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 898 N.E.2d 831 (Mass. 2009).........................20

*Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902 (D.C. Cir. 2006)......................................21

*Palmer v. Hoffman*, 318 U.S. 109 (1943) ................................................................................7

*Penllyn Greene Assocs., L.P. v. Clouser*, 890 A.2d 424 (Pa. Cmwlth. 2005) ..............................21

*Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751 (D.C. 2002) ...........................21

*Sack v. Low*, 478 F.2d 360 (2d Cir. 1973) ................................................................................31

\* *Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001).......................................................7, 8, 9, 11, 12, 18, 25, 26, 29, 34

\* *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, ___ U.S. ___,
    130 S. Ct. 1431 (2010).................................2, 10, 11, 12, 17, 18, 19, 23, 25, 26, 27, 29, 34

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)...............................................6, 9, 10, 25, 26

*Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206 (9th Cir. 2005) ................................................31

\* *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963
    (9th Cir. 1999).................................................14, 15, 16, 19, 22, 24, 25, 31, 35

*Walko Corp. v. Burger Chef Systems, Inc.*, 554 F.2d 1165
    (D.C. Cir. 1977) ................................................................................12, 13, 34

\* *Walker v. Armco Steel Corp.*, 446 U.S. 740
    (1980)................................................6, 8, 10, 11, 13, 14, 15, 19, 26, 34

*Weissinger v. United States*, 423 F.2d 795 (5th Cir. 1970) ..........................................................33

*Williams v. United States*, 754 F. Supp. 2d 942 (W.D. Tenn. 2010) ............................................33

*Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811 (Cal. 2002) ..............................................31

**Statutes, Rules, and Regulations**

28 U.S.C. § 2072..................................................................................................................6, 7, 29

\* D.C. Official Code § 16-5502, *et seq.*............................................................1, 4, 5, 20, 22, 23

D.C. Official Code § 16-5504................................................................................................5

\* Cal. Civ. Proc. Code § 425.16 ..........................................................................................15

Minn. Stat. § 145.682 (2011) ................................................................................................33

Tenn. Code Ann. § 29-26-122 (2012).....................................................................................33

* Fed.R.Civ.P. 12.........................2, 3, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, 28, 30, 31, 32, 34

Fed.R.Civ.P. 12(d) advisory committee's note...........................................................................27

Fed.R.Civ.P. 23 ....................................................................................................................10

* Fed.R.Civ.P. 41 .........................................................................................3, 8, 9, 14, 32, 33, 34

* Fed.R.Civ.P. 56.........................2, 3, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, 28, 30, 31, 32, 34,

## Legislative History

* Council of the District of Columbia, Committee on Public Safety and the Judiciary,
    Report on Bill 18-893, the "Anti-SLAPP Act of 2010," November 18, 2010
    ("Comm. Rep.") ........................................................................................1, 21, 22, 23, 34

## Other

27A Tracy Bateman Farrell, John R. Kennel et. al., *Federal Procedure, Lawyers Edition*
    § 62:557 (Mar. 2012) ...............................................................................................33

INTRODUCTION AND OVERVIEW

In passing the District of Columbia Anti-SLAPP Act of 2010 (the "Act"), the Council of the District of Columbia joined the majority of states in crafting a legislative response to the threat to speech rights from "SLAPPs": strategic lawsuits against public participation.  Council of the District of Columbia, Committee on Public Safety and the Judiciary, Report on Bill 18-893 (Nov. 18, 2010) ("Comm. Rep.").  SLAPPs are typically civil actions that arise out of persons' communications to government bodies or to the public on an issue of public concern. SLAPPs can be particularly insidious; as noted in the Committee Report following a review of the use of SLAPPs in the District and other jurisdictions, such suits "are often without merit, but achieve their filer's intention of punishing or preventing opposing points of view, resulting in a chilling effect on the exercise of constitutionally protected rights." *Id.*  Through the imposition of costs and the related burdens of defending a lawsuit, the Council concluded, "*litigation itself* is the plaintiff's weapon of choice" in SLAPPs, wielded to chill the speech of those who would otherwise speak out on a matter of public interest.  *Id*. at 4.

To combat this problem, the Council stated its intention to follow the legislatures of the numerous states that have extended "absolute or qualified immunity to individuals engaged in protected actions." *Id.*  The Council's stated purpose in the Act was to "ensure a defendant is not subject to . . . expensive and time consuming discovery," so that "District residents are not intimidated or prevented, because of abusive lawsuits, from engaging in political or public policy debates." *Id.*  To accomplish that policy goal, the Council provided a qualified immunity right in the Act.  A defendant invoking the Act's protections is entitled to immunity from suit if the claim arises from an act in furtherance of the right of advocacy on issues of public interest and the claim is not likely to succeed on the merits.  *See* D.C. Code 16-5502(b).

Under the two-part test governing the analysis, the Act's protections apply in federal diversity actions.

*First*, the Act and the Federal Rules of Civil Procedure can operate side by side in federal diversity actions without conflict. Under controlling precedent, a federal court sitting in diversity is bound to apply an otherwise applicable District of Columbia rule unless there is a collision between a federal rule and the District rule that is unavoidable after a fair reading of the rules. And, all three federal appellate courts to have examined the issue have held that a state Anti-SLAPP statute's immunity-granting provision *does not conflict* with Rules 12 or 56 of the Federal Rules of Civil Procedure. These conclusions are consistent with the precedent of the Supreme Court and the D.C. Circuit, and should be applied to the Act.

Rules 12 and 56 do not "attempt[ ] to answer the same question" as the District's Act. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010). The Council made abundantly clear in the Act's structure and legislative history that it was codifying a qualified immunity. The Act is not addressed to the procedures in Rules 12 or 56, which are general federal procedures governing all categories of cases; rather, it focuses on claims challenging defendants' exercise of their constitutional speech rights, and for those claims it codifies a targeted, qualified immunity—a *substantive* immunity from claims that arise from conduct in furtherance of the right of advocacy on issues of public interest, and where plaintiff cannot show a likelihood of success on the merits.

Nothing in the text or scope of Rules 12 or 56 addresses the key operative question under the Act: whether immunity from suit is proper, based on both a defendant's demonstration that the claim arises out of constitutionally protected petitioning activity, and a plaintiff's failure to show a likelihood of success on the merits. Under Supreme Court and Circuit precedent, Rules

2

12 and 56 do not "occupy the field" for resolving such a question.  Respectfully, we submit that none of the authorities cited by the plaintiff—including the recent decision by the Honorable Robert L. Wilkins of this Court in *3M Co. v. Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), *appeal by 3M dismissed*, (No. 12-7012) (D.C. Cir. Oct. 19, 2012), District's motion to withdraw appeal in No. 12-7017 and vacate district court decision for mootness pending, on which plaintiff places near-exclusive reliance—remotely establishes that they do. The Act provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis than Rules 12 or 56 envision, and can, as a practical matter, operate in tandem with those rules, without conflict.  This construction of the federal rules both is straightforward and serves to harmonize them with the Act, as governing precedent requires.

Nor is there any conflict between Rule 41(b) and the Act.  Rule 41(b) is a default rule of construction of otherwise ambiguous language in dismissal orders.  The Act's proviso that, where a defendant has established that it is entitled under Section 5502 to immunity from suit, dismissal must be with prejudice may, therefore, operate consistent with Rule 41(b).  Further, that provision concerning dismissal with prejudice advances the Council's speech-rights-promoting policy goals.   Rule 41(b) readily can—and should—be interpreted to allow application of the Act's rights-implementing protections.

*Second*, applying the Act in federal diversity cases promotes the twin aims of *Erie*: discouragement of forum-shopping and avoidance of inequitable administration of the laws. In light of the Council's policy choice, there should not be *fewer* protections available in federal court for individuals subjected to meritless suits designed to silence constitutionally protected speech than in Superior Court.  Refusing to grant the protections of the Act to defendants because a plaintiff chose to file its case in federal court, rather than in the Superior Court, would

3

allow plaintiffs who wish to file a SLAPP in the District to easily evade the application of the Act's protections simply by filing in federal court. Indeed, the unfortunate *3M* decision has already prompted forum-shopping: plaintiffs in a separate case alleging defamation against a journalist and other parties moved to withdraw an action from the District of Columbia Superior Court, where defendants had raised an Anti-SLAPP defense, to this Court for the express purpose of taking advantage of that decision.

For these reasons and those detailed below, the Act's protections apply in diversity cases. This Court should reject plaintiff's invitation to hold otherwise. A refusal to apply the Act at all in this Court would violate the *Erie* doctrine, undermine the substantive policy goals of the Council of the District of Columbia, and promote forum-shopping.

THE ANTI-SLAPP ACT

The Act, as codified in relevant part at D.C. Code Section 16-5502, provides:

(a) A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest within 45 days after service of the claim.

(b) If a party filing a special motion to dismiss under this section makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits, in which case the motion shall be denied.

(c)     (1) Except as provided in paragraph (2) of this subsection, upon the filing of a special motion to dismiss, discovery proceedings on the claim shall be stayed until the motion has been disposed of.

        (2) When it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome, the court may order that specified discovery be conducted. Such an order may be conditioned upon the plaintiff paying any expenses incurred by the defendant in responding to such discovery.

4

(d) The court shall hold an expedited hearing on the special motion to dismiss, and issue a ruling as soon as practicable after the hearing. If the special motion to dismiss is granted, dismissal shall be with prejudice.

D.C. Official Code § 16-5502.

Thus, under the Act, the immunity operates as follows. A defendant may file a special motion to dismiss "any claim arising from an act in furtherance of the right of advocacy on issues of public interest." D.C. Official Code § 16-5502(a). If the moving defendant shows that the claim arises from such an act, the claim must be dismissed, with prejudice, *unless* the plaintiff can show that "the claim is likely to succeed on the merits," in which case the immunity does not apply, and the motion will not be granted. D.C. Official Code § 16-5502(b). In addition, the Act provides for a rebuttable presumption of a stay of discovery upon the filing of a special motion to dismiss, and provides for cost-shifting of any ultimate discovery in the court's discretion. D.C. Official Code § 16-5502(c). The Act also provides that a court may award a party who prevails, "in whole or in part, on a motion brought under § 16-5502," the costs of litigation, including reasonable attorney fees. D.C. Official Code § 16-5504.

ARGUMENT

**A. The District of Columbia Anti-SLAPP Act Applies In Federal Diversity Actions.**

Under the *Erie* doctrine, "'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction." *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965), and citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). The Supreme Court "has evolved a set of tests to determine whether a law is substantive or procedural for *Erie* purposes." *Id.* There are two steps to the governing test.

5

Under the first step, the "question" is whether there is an applicable federal rule or statute, the "scope" of which is "sufficiently broad to control the issue before the Court." *Id.* (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980), and citing *Shady Grove*, 130 S. Ct. at 1437, and *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n.6 (1988)). "If there is, the Federal Rule or statute governs, state law notwithstanding, '*unless* it exceeds statutory authorization or Congress's rulemaking power.'" *Id.* (quoting *Shady Grove*, 130 S. Ct. at 1437 (in turn citing *Hanna*, 380 U.S. at 463-64)) (emphasis added).   The analysis thus must account for the Rules Enabling Act's command that the Federal Rules of Civil Procedure and the Federal Rules of Evidence "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. If the federal rule, properly construed, and the state rules at issue "can exist side by side, . . . each controlling its own intended sphere of coverage without conflict," then a court must proceed to the second step of the test. *Burke*, 685 F.3d at 1108 (quoting *Walker*, 446 U.S. at 752).

Under the second step, the federal court must apply the relevant District of Columbia or state law if "the failure to enforce state law 'would disserve the so-called 'twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.''" *Id*. (quoting *Stewart*, 487 U.S. at 27 n.6 (in turn quoting *Hanna*, 380 U.S. at 468, and citing *Gasperini*, 518 U.S. at 428)).

Applying this governing test, the Act's protections apply in federal court diversity actions, as the District now shows.

6

I.      **The Act And The Federal Rules Of Civil Procedure Can Operate Side By Side In Federal Court Without Conflict.**

      A.      **Under governing precedent, a federal court sitting in diversity is bound to apply an otherwise applicable state rule unless there is an unavoidable, direct collision between a federal rule and a state rule.**

            1.      Supreme Court precedent.

In the more than seven decades since the Supreme Court decided *Erie*, it has consistently construed federal procedural rules flexibly to permit the application of state law in diversity matters, so as not to stymie state substantive ends.  This approach reflects both *Erie*'s federalism-based principles and Congress's related directive in the Rules Enabling Act that the federal procedural "[r]ules 'shall not abridge, enlarge or modify any substantive right.'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001) (quoting 28 U.S.C. § 2072(b)).

In implementing these principles, the Supreme Court has consistently applied state law in diversity actions unless the Court is confronted with an unavoidable, direct conflict between the federal procedural rule and the state law in question.  *Palmer v. Hoffman*, 318 U.S. 109 (1943), held that state law, and not Federal Rule of Civil Procedure 8(c)(1), controlled the determination as to which party in a state-law tort suit bore the burden of proving (or disproving) contributory negligence, even though the federal rule by its terms required that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . contributory negligence." 318 U.S. at 117. The Court construed the federal rule to "cover[] only the manner of pleading," and not to ordain *which* party has the burden of establishing contributory negligence. *Id.*  Similarly, *Cohen v. Beneficial Indus. Loan Co.*, 337 U.S. 541 (1949), upheld the applicability of a state law requiring plaintiffs in shareholder derivative suits to post a bond on the grounds that it "created a new liability." 337 U.S. at 556–57.  The Court thus applied the state law even though Federal Rule of Civil Procedure 23 expressly addressed the procedural requirements for

7

maintaining a stockholder complaint. *Id*. at 556.  *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980), upheld the application of a state law alleged to conflict with Federal Rule of Civil Procedure 3 in making the determination of when a lawsuit for a state-law claim "commenced." 446 U.S. at 753.  Although both state law and the federal rule addressed the point in time when lawsuits were commenced, the Court held that "there is no direct conflict," *id.* at 752, because "[t]here is no indication that the [federal] Rule was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations," *id.* at 750–51.

Similarly, *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415 (1996), held that state law regarding the standard of judicial review in challenges to the size of a jury's damages award governed in federal court diversity actions arising under that state's law. 518 U.S. at 419.  In so holding, the Court rejected Justice Scalia's view in dissent that, because Rule 59 provides that new trials may be granted "'for any of the reasons for which new trials have heretofore been granted . . . *in the courts of the United States*,'" that rule leaves "no room for the operation of that [state] law." *Id.* at 467–68 (Scalia, J., dissenting). The Court explained that although a "Federal Rule applies regardless of contrary state law," "[f]ederal courts have interpreted the Federal Rules . . . with sensitivity to important state interests and regulatory policies." *Id.* at 426 n.7 (majority) (internal quotation marks omitted).

Finally, *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), held that Federal Rule of Civil Procedure Rule 41(b)—which provides that certain involuntary dismissals be "with prejudice"—did not have a claim-preclusive effect on a dismissal rendered on state statute-of-limitations grounds made by a federal district court in one state, as to plaintiffs' attempts to refile a similar claim in a different state's court under that state's law.  *Id.* at 506. The

Court reasoned in part that if Rule 41(b) was construed to the contrary, it could violate the Rules Enabling Act. 531 U.S. at 503.

In the few exceptional cases where the Court *has* refused to apply the state law in question in a diversity action, it has in each instance explained how the related federal procedural rule could not be fairly interpreted to accommodate the state rule, and thus how the unavoidable, direct conflict required application of the federal rule. *Hanna* explained that Federal Rule of Civil Procedure 4(d)(1) provided "with unmistakable clarity . . . that in-hand service is not required in federal courts," while the relevant state rule provided explicitly that service *must* be "by delivery in hand." 380 U.S. at 470. This "clash [was] unavoidable" between the federal and state rules, and thus the federal rule controlled. *Id.* The Supreme Court in *Burlington Northern Railroad Co. v. Woods*, 480 U.S. 1 (1987), held that *two* unavoidable conflicts between Federal Rule of Appellate Procedure 38 and the state law at issue precluded application of the state rule. *Id.* at 7. First, the state law *mandated* that courts apply a penalty upon any affirmance of a monetary award, whereas Rule 38 provides for damages *only* "if the court of appeals [determines] that an appeal is frivolous." *Id.* at 4. Second, the state law required the penalty amount to be 10% of the awarded damages plus costs of appeal, whereas Rule 38 awards only "just damages and single or double costs," which may be "in an amount *less than* 10% of the lower court's judgment." *Id.* at 4, 7–8. Similarly, in *Stewart*, the federal statute provided that a district court may transfer venue based on "an individualized, case-by-case consideration of convenience and fairness," in which "[t]he presence of a forum-selection clause . . . will be a significant *factor* that figures centrally in the district court's calculus." 487 U.S. at 29 (emphasis added and internal citations and quotation marks omitted). The state law at issue, however, embodied a "*categorical* policy disfavoring forum-selection clauses," *id*. at 30 (emphasis added),

9

the application of which would "defeat [the] command" of the federal law that "multiple considerations govern transfer within the federal court system," *id*. at 31.    The Court, accordingly, held that the state and federal rules could not exist in a diversity action "'side by side . . . each controlling its own sphere of coverage without conflict.'" *Id.* (quoting *Walker*, 446 U.S. at 752).

Most recently, in *Shady Grove*, the Court reaffirmed that a truly unavoidable conflict will mean that an on-point federal rule controls, so long as the federal procedural rule does not exceed the Rules Enabling Act's ban on expanding or abridging substantive rights.    In that federal diversity action, a state statute by its terms *precluded* plaintiffs seeking a statutory penalty from proceeding in a class action, but Federal Rule of Civil Procedure 23 provides that class actions "may be maintained" if the Rule's prerequisites are met. 130 S. Ct. at 1436 n.2.

The Court's decision in *Shady Grove* was fractured.  Four justices joined Justice Scalia in section IIA of his lead opinion, which addressed the conflicts analysis.  He noted: "[Rule 23] says that if the prescribed reconditions are satisfied '[a] class action *may be maintained*' (emphasis added)—not '*a class action may be permitted*.' . . . The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff: [h]e may bring his claim in a class action if he wishes." *Id.* at 1438 (quoting Fed. R. Civ. P. 23).  Because the state statutory rule, if it applied, would strip that explicit procedural right of class action from plaintiffs in federal court, the opinion found a conflict, since "[b]y its terms the [state] provision precludes a plaintiff from 'maintaining a class action seeking statutory penalties.'" *Id.* at 1439.    Indeed, the opinion concluded, "even artificial narrowing cannot render [the state law] compatible with Rule 23." *Id.* at 1441.  Justice Scalia distinguished the Court's *Erie* opinions *applying* state law in diversity actions this way: "[E]ach [of those cases] involved a Federal Rule that we concluded could fairly

10

be read not to 'control the issue' addressed by the pertinent state law, thus avoiding a 'direct collision' between federal and state law." *Id.* at 1442 n.8 (quoting *Walker*, 446 U.S. at 749). He agreed that where a federal rule's applicability is ambiguous, courts should adopt the alternative reading that avoids substantial differences in the outcome of federal and state litigation. *Id.* at 1441 n.7 (citing *Semtek*, 531 U.S. at 504). Because, however, "there is only one reasonable reading of Rule 23," *id.* at 1441 n.7, he concluded, "a collision [between federal and state law] is 'unavoidable,'" *id*. at 1442 n.8 (quoting *Hanna*, 380 U.S. at 470). The federal rule, accordingly, controlled.

Having concluded that direct conflict was unavoidable, Justice Scalia's opinion in Section IIB turned to whether Rule 23 is consistent with the Rules Enabling Act. Justice Stevens did not join this section of Justice Scalia's opinion, which commanded only a plurality. Under the plurality's approach, if the federal rule "regulates procedure," it will apply notwithstanding any state law to the contrary. *Id.* at 1444 (plurality op.). Applying this test, the plurality concluded that Rule 23 was a valid exercise of the Supreme Court's rulemaking authority. *See id.* at 1444.

Justice Stevens concurred in the judgment on the first step of the analysis—holding that Rule 23 applied and the state law could not preclude maintenance of the class. His concurrence expressed disagreement, though, with the plurality's approach to determining a federal rule's applicability in a particular case. He stated that, notwithstanding a direct conflict with a federal rule, "there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." *Id.* at 1448 (Stevens, J., concurring). Under Justice Stevens' concurrence, even if the state provision is nominally procedural, it will still apply in diversity cases—and displace the federal rule—if it is

11

"so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Id.* at 1450. In his view, to hold otherwise would allow federal rules to "abridge" the substantive state rights given form by that procedural state provision—and therefore violate the Rules Enabling Act. *Id.* at 1451.  Applying this standard, Justice Stevens concluded that there was no abridgment of substantive rights in violation of the Rules Enabling Act by application of Rule 23, and thus he concluded, reaching the same result as the plurality, that Rule 23 is valid and would control over the conflicting state law. *Id.* at 1459–60. He emphasized that the legislative history of the state law at issue did not establish that it was adopted for primarily substantive reasons.  *Id.* at 1458–59.

Justice Stevens noted the logical result of the reasoning employed in his concurrence: "Thus, the second step of the inquiry may well bleed back into the first. When a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.* at 1452 (Stevens, J., concurring) (citing *Semtek*, 531 U.S. at 503). He was explicit that this approach calls for a "saving construction" of federal rules where possible to avoid application of a rule that would violate the Enabling Act's mandate that federal procedural rules "shall not" alter "*any* substantive right." *Id.* at 1452 (emphasis in concurring opinion).

    2.  Precedent of the Circuit.

The several precedents of the D.C. Circuit evaluating a claimed conflict between a federal rule and a District rule have echoed the Supreme Court's teachings that courts, where possible, should construe the respective rules in harmony. In *Walko Corp. v. Burger Chef Systems, Inc.*, 554 F.2d 1165 (D.C. Cir. 1977); *Answering Service, Inc. v. Egan*, 728 F.2d 1500 (D.C. Cir. 1984); and *Burke*, the Circuit held that the federal rule in question did not control the

resolution of the issue in question, and applied the District rule. The District is unaware of a *single* decision by the Circuit in the post-*Erie* era *ever* to have refused to apply an otherwise applicable state or District law on the grounds that a federal rule overrode the state or District rule.

*Walko* addressed whether, for purposes of the District's statute of limitations, the clock stopped when plaintiff had filed a motion to intervene in another suit. 554 F.2d at 1170. The Court held that resolution of that question "is not governed by [Federal Rule of Civil Procedure] 3, whatever it has to say about tolling in other respects," and is governed by District law. *Id.*

In *Answering Service*, the issue was whether a party was barred by *res judicata* from bringing a claim for wrongful involvement in litigation. Federal Rules of Civil Procedure 13, 14, and 18 describe the claims, cross-claims, and counterclaims that must be joined to an original claim. The key issue was whether to apply the District's common-law rule requiring separation between certain cross-claims and a certain new claim. The federal rules as construed by the Circuit did not expressly address this question, and the Circuit applied *Erie* and thus found the state rule applicable. 728 F.2d at 1505.

Most recently, the Circuit addressed an alleged conflict between a federal and District rule in *Burke*. *Burke* interpreted Federal Rule of Evidence 702 as "determin[ing] the circumstances in which expert testimony is *permitted* (*i.e.*, admissible)." 685 F.3d at 1108. The District's rule "by contrast, defines a circumstance in which expert testimony is *required*" in proving a claim for negligence. *Id.* Despite the fact that the two rules address the *same* topic, the court recognized that a trial court can "apply both the federal standard . . . and the District rule," and, accordingly, held that the scope of the federal rule is not "sufficiently broad to control the issue." *Id.* at 1107 (quoting *Walker*, 446 U.S. at 749–50).

13

**B.      The Act and the Federal Rules of Civil Procedure can operate side by side.**

The principles in the binding precedent of the Supreme Court and the D.C. Circuit, recapped above, reinforced by the logic of decisions of all three federal appellate courts to have squarely addressed the issue, support the conclusion that the Act's free speech rights-implementing protections apply in diversity actions.  As shown below, Federal Rules of Civil Procedure 12, 56 and 41 are *not* so broad that they cannot operate side by side with the Act's qualified-immunity provisions. The District first addresses Rules 12 and 56 together, since they operate closely in tandem, and then address Rule 41.

1.      The Act does not conflict with Rules 12 or 56.

a.      All three federal appellate courts to have examined whether a state anti-SLAPP statute's immunity-granting provision conflicts with Rules 12 or 56 have held that there is no conflict.

The three federal appellate courts to have examined whether a state anti-SLAPP statute applies in federal diversity actions have uniformly held that it does. The uniform holdings—as well as the reasoning of those decisions in applying the Supreme Court's precedent—are instructive.

*Ninth Circuit—United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), decided by a unanimous Ninth Circuit panel, held that Federal Rules of Civil Procedure 8, 12, and 56 and the immunity provision of California's anti-SLAPP law "can exist side by side . . . each controlling its own intended sphere of coverage without conflict." *Id.* at 972 (quoting *Walker*, 446 U.S. at 752). In that case, which arose out of claims in a *qui tam* action against a large government contractor, the contractor filed counterclaims against the *qui*

14

*tam* relators. The district court denied the relators' motion to dismiss, to strike the counterclaims, and to award fees under California's anti-SLAPP act because, among other things, it conflicted with Rules 12(b)(6) and 56.

Applying the "direct collision" standard of *Walker*, the Ninth Circuit reversed. The court explained that "[i]f successful, the litigant [moving under the anti-SLAPP act] may be entitled to fees." *Id.* "If unsuccessful, the litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment. We fail to see how the prior application of the anti-SLAPP provisions will directly interfere with the operation of Rule 8, 12, or 56. In summary, there is no 'direct collision' here." *Id.*

In reaching that conclusion, the court noted that "the Anti-SLAPP statute and the Federal Rules do, in some respects, serve similar purposes, namely the expeditious weeding out of meritless claims before trial. This commonality of purpose, however, does not constitute a 'direct collision'—there is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Id.* (citing *Cohen*, 337 U.S. at 556). Further, the Ninth Circuit stressed, "[t]he Anti-SLAPP statute . . . is crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'" *Id.* (quoting Cal. Civ. Proc. Code § 425.16(a)).

Subsequent Ninth Circuit decisions have reaffirmed the application of the California act in diversity matters and the reasons for it under *Erie* and its progeny. In *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), reviewing the denial of an anti-SLAPP motion on interlocutory appeal, the Circuit noted that "[b]ecause the California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as

15

well," consistent with *Erie*. *Id.* at 1025–26. It reversed the district court's denial of the anti-SLAPP motion, and remanded for further proceedings. *Id.* at 1035. Again, in *Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010), the Ninth Circuit took up this issue: "Applying the familiar framework of [*Erie*] and its progeny, we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction." *Id.* at 900 n.2 (citing *Newsham*, 190 F.3d at 970–73). The court explained carefully the distinction between the questions resolved by the anti-SLAPP act and those answered by Rules 12 and 56. An anti-SLAPP motion under California law "requires the court to ask, first, whether the suit arises from the defendant's protected conduct and, second, whether the plaintiff has shown a probability of success on the merits. If the first question is answered in the negative, then the motion must fail, even if the plaintiff stated no cognizable claim. Of course, if a plaintiff stated no cognizable claim, then the defendant would be entitled to dismissal under Rule 12(b)(6). Thus, a Rule 12(b)(6) motion to dismiss may succeed where an anti-SLAPP motion to strike would not." *Id.* at 901–02. As to Rule 56, the court noted that the "second stage of the [California] anti-SLAPP inquiry determines whether the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. Such test is *similar* to the one courts make on summary judgment, though *not identical*." *Id.* at 902 (internal citation omitted and emphasis added).

*Fifth Circuit*—The Fifth Circuit has, also in a unanimous panel opinion, followed the Ninth Circuit's lead. *Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164 (5th Cir. 2009), held that under *Erie* the "nominally-procedural" Louisiana anti-SLAPP statute was a substantive provision the application of which "governs" in diversity cases. *See id.* at 168–69 (citing *Erie* and *Newsham* with approval).

*First Circuit*—Most recently, the First Circuit took up the issue, in *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010).  In *Godin*, a former public school principal brought a diversity suit in federal district court in Maine against (among others) individual school system employees, alleging defamation against those employees for having opined to school officials that the principal had acted abusively toward students. The individual defendants raised Maine's anti-SLAPP act defense, and moved to dismiss under that act. The district court denied the individual defendants' special motion to dismiss under the state anti-SLAPP act, holding that it "conflicts with Fed.R.Civ.P. 12 and 56 and so does not apply in federal court." *Id.* at 82.

The First Circuit reversed, in the first (and thus far only) federal appellate decision to apply the *Erie* line of cases to a state anti-SLAPP act after *Shady Grove*. It noted with respect to *Shady Grove*:

> The Court's fractured holding regarding when a Federal Rule is "sufficiently broad" to control an issue of state law is given content by other language used by the Court. The concepts of congruence, co-extensiveness, difference, and direct or indirect conflict continue to play a role in the analysis. *Shady Grove* uses the language of "potential conflict," "compatible" and "collision with state law." *Id.* at 1440–42 (majority opinion). The plurality also characterizes the first step of the analysis as "determining whether the federal and state rules can be reconciled (because they answer different questions)". *Id.* at 1445 (plurality opinion); *see also id.* at 1451 (Stevens, J., concurring) (stating the first step of the analysis asks whether the federal rule leaves "no room for the operation of seemingly conflicting state law.").

*Id.* at 87–88.

Applying those principles, the First Circuit concluded that neither Rule 12(b)(6) nor Rule 56, on a "straightforward reading of their language, was meant to control the particular issues under [the Maine anti-SLAPP act] before the district court." *Id.* at 86. "To use the language of *Shady Grove*, Rules 12 and 56 do not 'attempt[ ] to answer the same question,' nor do they 'address the same subject,' as" the Maine anti-SLAPP act. *Id.* at 88.   The anti-SLAPP statute

"on its face is not addressed to either of these procedures, which are general federal procedures governing all categories of cases," but, rather, "is only addressed to special procedures for state claims based on a defendant's petitioning activity." *Id.* The First Circuit noted that in "contrast to the state statute in *Shady Grove*," Maine's anti-SLAPP act "does not seek to displace the Federal Rules or have Rules 12(b)(6) and 56 cease to function. In addition, Rules 12(b)(6) and 56 do not purport to apply only to suits challenging the defendants' exercise of their constitutional petitioning rights." *Id.* The court of appeals concluded that the Maine legislature "created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities." *Id.* The court distinguished both Rules: While Rule 12(b)(6) "serves to provide a mechanism to test the sufficiency of the complaint," the anti-SLAPP law "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special rules Maine has created to protect such petitioning activity against lawsuits." *Id.* at 89. "Rule 56," the court noted, "creates a process for parties to secure judgment before trial on the basis that there are no disputed material issues of fact, and as a matter of law, one party is entitled to judgment. Inherent in Rule 56 is that a fact-finder's evaluation of material factual disputes is not required. But [the anti-SLAPP act] serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Id.*

Citing Section IIA of Justice Scalia's *Shady Grove* opinion for the proposition that federal rules should be read "to avoid 'substantial variations [in outcomes] between state and federal litigation,'" *Shady Grove*, 130 S. Ct. at 1441 n.7 (quoting *Semtek*, 531 U.S. at 504), the First Circuit held that "similarities between [the Maine act] and Rules 12 and 56 as mechanisms

18

to efficiently dispose with meritless claims before trial occurs does not resolve the issue. Such an abstracted framing of the breadth of the Federal Rules is inappropriate." 629 F.3d at 89 n.16.

The First Circuit concluded that in light of its conclusion that the Maine anti-SLAPP act is not displaced, it had no need to reach the issue whether Rules 12 or 56, if they *were* construed to preempt application of the Maine act, would as applied violate the Rules Enabling Act. *See id.* at 86. It nevertheless noted that because the Maine act is "'so intertwined with a state right or remedy that it functions to define the scope of the state-created right,' it cannot be displaced by Rule 12(b)(6) or Rule 56." *Id.* at 89 (quoting *Shady Grove*, 130 S. Ct. at 1452 (Stevens, J., concurring)). "[I]f Rules 12(b)(6) and 56 were thought to preempt application of all of [the Maine act], a serious question might be raised under the Rules Enabling Act." *Id.* at 90.

In sum, the First Circuit held in its conflicts analysis: "there is no indication that Rules . . . 12 and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Id.* at 91 (quoting *Newsham*, 190 F.3d at 972, and citing *Henry*, 566 F.3d at 169–70). "Rather, Rules 12 and 56 'can exist side by side' with [the Maine act], 'each controlling its own intended sphere of coverage without conflict.'" *Id*. (quoting *Newsham*, 190 F.3d at 972) (in turn quoting *Walker*, 446 U.S. at 752 (internal quotation marks omitted)).

> b. The other circuits' conclusions and reasoning in holding that state anti-SLAPP acts' immunity-granting protections do not conflict with Rules 12 or 56 are supported by the precedent of the Supreme Court and the D.C. Circuit, and should be applied to the Act.

The result in this Court for the Act should be the same here as that reached by the three federal appellate courts that have addressed the issue: the application of the District's anti-SLAPP Act does not conflict with Rules 12 or 56.

Rules 12 and 56 do not "attempt[ ] to answer the same question as" the Act. *Shady Grove*, 130 S. Ct. at 1437, because they are "addressed to different (but related) subject-matters,"

*Godin*, 629 F.3d at 88. The District's Act "on its face is not addressed to either of these procedures, which are general federal procedures governing all categories of cases." *Id.* Rather, it focuses on District-law "claims based on a defendant's petitioning activity." *Id.* The Act applies only to claims challenging defendants' exercise of their constitutional speech rights, and for those claims it codifies a targeted, qualified immunity—a *substantive* immunity from claims that arise from conduct in furtherance of the right of advocacy on issues of public interest, where a plaintiff cannot show it is "likely to succeed on the merits." D.C. Official Code § 16-5502(b). This entails both some admittedly procedural aspects as well as substantive aspects: the Act, just like the Maine act (i) "shifts the burden to plaintiff to defeat the special motion"; (ii) "determines the scope of plaintiff's burden"; and (iii) "allows courts to award attorney's fees and costs to a defendant that successfully brings a special motion to dismiss," a statutory element long determined to be substantive for *Erie* purposes. *Godin*, 629 F.3d at 89 n.15.

As these federal appellate courts—as well as a number of state courts—have recognized, anti-SLAPP statutes may codify an implied substantive immunity by using a burden-shifting provision combined with a provision calling for dismissal or striking of plaintiff's claim once the burden shifts back to plaintiff. Courts have repeatedly recognized an implied immunity in an anti-SLAPP statute, regardless of the fact that the statute being analyzed does not use the word "immunity." *See, e.g., Batzel*, 333 F.3d at 1025 ("a defendant's rights under the [California] anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability."); *Henry*, 566 F.3d at 177 (although it does not use the term "immunity," Louisiana's anti-SLAPP act "immuniz[es] speakers from suits stemming from the exercise of First Amendment rights"); *N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 898 N.E.2d 831, 845 (Mass. 2009) (recognizing the "immunity from suit under the

20

anti-SLAPP statute" despite the lack of any express immunity provision); *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 144 (Okla. 1998) (similar); *Penllyn Greene Assocs., L.P. v. Clouser*, 890 A.2d 424, 430 n.7 (Pa. Cmwlth. 2005) (similar).

It is well-established in this Circuit that under *Erie*, in diversity cases applying District law, the Court's "duty . . . is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006). Under District of Columbia Court of Appeals precedent, "[w]hen interpreting a statute, the judicial task is to discern, and give effect to, the legislature's intent." *A.R. v. F.C.*, 33 A.3d 403, 405 (D.C. 2011). In construing legislative intent, the District of Columbia Court of Appeals has deemed it appropriate to refuse to adhere strictly to the plain wording of a statute where doing so would not "'effectuate the legislative purpose,' as determined by a reading of the legislative history or by an examination of the statute as a whole." *Carter v. State Farm Mut. Auto. Ins.*, 808 A2d 466, 471 (D.C. 2002) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 2002)).

Here, the legislative purpose could not be more clearly stated: the Council in the unanimous Committee Report, which was never rebutted on this point at any stage of the legislative debate, explained that it was "*follow[ing] the lead of other jurisdictions, which have similarly extended absolute or qualified immunity to individuals engaging in protected actions.*" Comm. Rep. at 4 (emphasis added); *see also id.* at 1.

Indeed, the one judicial opinion issued since *3M* to have specifically considered the Council's intent in this regard, *Farah v. Esquire*, 2012 WL 1970897 (D.D.C. June 4, 2012) (Collyer, J.), adopted precisely this view. *Farah* held that the protections of the Act *do* apply in diversity actions, and emphasized that it "was certainly the intent of the D.C. Council and the

21

effect of the law—dismissal on the merits—to have substantive consequences." *Id.* at *6 n.10.

In applying the Act's protections, *Farah* recognized that "the D.C. Anti-SLAPP Act intentionally follows 'the lead of other jurisdictions, which have similarly extended absolute or qualified immunity to individuals engaged in protected actions.'" *Id.* at 6 (quoting Comm. Rep. at 4). Accordingly, "to extend such immunity, the Act allows defendants to file a motion to dismiss any claim 'arising from an act in furtherance of the right of advocacy on issues of public interest.'" *Id.* (quoting D.C. Official Code § 16-5502(a)).

That view is further reinforced by the structure and language the Council chose, drawn from peer jurisdictions' anti-SLAPP language. In particular, the statutory standard that it employed is very similar to the California statute that the Ninth Circuit repeatedly—and for over a decade at the time of the Council's deliberations—had (as it does today) recognized as having enacted an implied immunity from suit. *Compare Newsham*, 190 F.3d at 971:

> In order to prevail, a citizen party must make a prima facie showing that the SLAPP suit arises from any act by the citizen party in furtherance of the person's right of petition or free speech . . . in connection with a public issue… The burden then shifts to the SLAPP plaintiff to establish by a reasonable probability that the SLAPP plaintiff will prevail on the claim and that the citizen party's purported constitutional defenses are not applicable to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.") (internal quotation marks omitted)

*with* D.C. Official Code § 16-5502(a)(b):

> A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest …. If a party filing a special motion to dismiss under this section makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits, in which case the motion shall be denied.

This similarity is unsurprising, since the Council specifically reviewed and cited the report of the "California Anti-SLAPP Project," the only such state-specific report that it cited. Comm. Rep. at 3.

From all this, the District submits that the District of Columbia Court of Appeals would find the Council's intent in the Act to enact an immunity to be clear.   With that understanding in mind, there is nothing in the text or scope of Rules 12 or 56 addressing the "key question"—for *Shady Grove* purposes—whether an immunity from suit, based on both the demonstration that the claim arises out of constitutionally-protected speech activity and a lack showing of likelihood on the merits, has been established by a defendant.

Rule 12(b)(6) requires a defense to be asserted in any required responsive pleading, and allows a party to assert a "failure to state a claim upon which relief can be granted." The Act "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis than the federal rules: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special" standard that the District has "created to protect such petitioning activity against lawsuits." *Godin*, 629 F.3d at 89.

The Act likewise provides mechanisms for relief for a defendant in a SLAPP case different in kind from that provided in the federal summary judgment rule. Rule 56(a) allows parties to move for summary judgment, and requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Act "serves the entirely distinct function," *Godin*, 629 F.3d at 89, of protecting those specific defendants that have been (a) targeted with litigation on the basis of their protected speech, (b) where the plaintiff has not shown a likelihood of success on the merits, *see* D.C. Official Code § 16-5502(a)-(b).

23

Just as with the state anti-SLAPP acts that have been held by federal appellate courts to apply in diversity, the District's Act does *not* "seek to displace the Federal Rules or have Rules 12(b)(6) and 56 cease to function." *Godin*, 629 F.3d at 88. As a practical matter, the Act and these federal rules can operate in tandem—both when a party's special motion to dismiss fails and when it succeeds.

If defendants invoking the Act's protections *fail* to convince the judge that their statements are "in furtherance of the right of advocacy on issues of public interest" or if the court concludes that "the claim is likely to succeed on the merits," such a ruling would do nothing to interfere with the disposition of outstanding or subsequent motions filed by a defendant under Rule 12 or by either party under Rule 56. Indeed, in the *3M* case, defendants' motion under the Act was denied but their 12(b)(6) motion was granted as to every claim but one. *3M*, 842 F. Supp. 2d at 114–20. Similarly, in *Farah*, the district court granted dismissal under both Rule 12(b)(6) and the Act. 2012 WL 1970897. While these dismissals may both have the effect of causing dismissal of the claims in question, because of the fees and costs provisions associated with the anti-SLAPP motion (provisions long recognized as substantive for *Erie* purposes), the two dismissals neither turn on the same questions nor necessarily have the same consequences. *See, e.g.*, *Newsham*, 190 F.3d 963 (evaluating the district court's grant of a Rule 12(b) motion to dismiss for lack of jurisdiction and denial of California anti-SLAPP act motion to strike). Again, the Act and federal rules can operate in tandem, each in their own respective sphere.

To be sure, a *successful* special motion to dismiss a claim under the Act generally may obviate the need for the district court to entertain further dismissal motions. But this does not amount to a conflict with Rules 12 and 56, any more than those rules conflict with each other. The Act here simply provides an additional, independent basis upon which a court may dispose

24

of a claim prior to trial. *See Godin*, 629 F.3d at 89 (Maine anti-SLAPP law "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis [than Rule 12(b)(6)]."). Indeed as a practical matter, as *Farah* and *3M* show, it can reasonably be expected that defendants will regularly invoke both bases for dismissal and district courts will entertain both without the analysis under the Act displacing or necessarily becoming co-extensive with the analysis under Rule 12(b)(6). They are different motions, designed for some common and some different purposes, evaluated under different standards, and with a different range of attendant consequences where the motion is granted.

In any event, the partial similarity between the Act's provisions "and Rules 12 and 56 as mechanisms to efficiently dispose of meritless claims before trial occurs does not resolve the issue" of whether the Act may be applied under the *Erie* line of cases. *Godin*, 629 F.3d at 89 n.16 (citing *Shady Grove*, 130 S. Ct. at 1441 n.7 (in turn relying on *Semtek*, 531 U.S. at 504)); *see also Newsham*, 190 F.3d at 972 ("This commonality of purpose, however, does not constitute a direct collision—there is no indication that Rules 8, 12 and 56 were intended to occupy the field with respect to pre-trial procedures aimed at weeding out meritless claims.").

There is no conflict here in the relevant sense. A conflict that requires a federal court to disregard state law in a diversity action is, instead, a conflict that directly prevents the federal court from obeying two commands at once. Thus, for example, *Hanna* explained that the clash was "unavoidable" between Rule 4(d)(1)'s command that "in-hand service is not required in federal courts" and the state rule's requirement that service *must* be "by delivery in hand." 380 U.S. at 470. In *Stewart*, the federal statute for transfer requests required "an individualized, case-by-case consideration of convenience and fairness" and could not exist in a diversity action "side by side" with the state law's "*categorical* policy disfavoring forum-selection clauses," 487 U.S.

25

at 29, 31 (emphasis added) (quoting *Walker*, 446 U.S. at 752), the application of which would "defeat [the] command" of the federal law. *Id.* at 31. In *Burlington Northern*, the Court similarly stressed that a federal appellate court, if both Federal Rule of Appellate Procedure 38 and the state law applied, would be faced with a situation where it would be forced to either exceed its authority under Rule 38 or to violate the mandatory state-law obligation. As a practical matter, the two laws could not operate "side by side." 480 U.S. at 7. Similarly, in *Shady Grove*, the Court confronted a situation where a judge faced with plaintiffs demanding state statutory penalties and seeking class certification must either refuse to apply Rule 23's express "may maintain" language or certify a class in violation of state law. *Shady Grove*, 130 S. Ct. at 1441. Again, there was no practical way for the trial judge to apply both laws "side by side." *Id.* at 1442.

For the reasons set out above, Rules 12 and 56 read in a straightforward way do not "attempt[ ] to answer the same question as" the Act, and thus there is no conflict under the standard laid out in Section IIA of *Shady Grove*. 130 S. Ct. at 1437. And under that same standard, to the extent the Court finds any ambiguity on the issue, it "should read an ambiguous Federal Rule to avoid 'substantial variations [in outcomes] between state and federal litigation.'" *Id.* at 1441 n.7 (quoting *Semtek*, 531 U.S. at 504). That directive points as well to a conclusion of no conflict: here, if the Court were to hold that the federal rules forbid application of the Act, the Act's speech-rights-focused immunity, burden-shifting, and cost- and fee-related protections would *only* be available in the District of Columbia in *Superior* Court, but *not* available in federal district court, a variation that is surely "substantial." *Id.*

Because the Act is, like its Maine analog, "'so intertwined with a state right or remedy that it functions to define the scope of the state-created right,' it cannot be displaced by Rule

26

12(b)(6) or Rule 56." *Godin*, 629 F.3d at 89 (citing *Shady Grove*, 130 S. Ct. at 1452 (Stevens, J., concurring)).[4]

      c.      The authorities cited in *3M Co. v. Boulter* do not support the conclusion that Rules 12 or 56 conflict with application of the Act in federal diversity actions.

To conclude that Rules 12 and 56 conflict with application of the Act in diversity matters, the *3M* decision relied principally on: (i) Advisory Committee Notes to the 1946 Amendments to the Federal Rules of Civil Procedure, and on several decisions from the 1940s and 1950s of the D.C. Circuit and other circuits applying Rules 12 and 56; (ii) the Supreme Court's decisions in *Burlington Northern*, *Shady Grove*, and *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958); and (iii) *Metabolife Int'l v. Wornick*, 264 F.3d 832 (9th Cir. 2001). We respectfully submit that none of those authorities supports let alone compels the conclusion reached in *3M*.

*Historical materials and mid-20th Century decisions—3M's* recount of the Advisory Committee notes and early decisions applying the 1946 amendments to Rules 12 and 56 does not support its conclusion that Rules 12 and 56 are intended to "occupy the field" of weeding out meritless claims. *See 3M*, 842 F. Supp. 2d at 109 (citing, *e.g.*, Fed.R.Civ.P. 12(d) advisory committee's note; *Gallup v. Caldwell*, 120 F.2d 90 (3d Cir. 1941); *Leimer v. State Mut. Life Assurance Co.*, 108 F.2d 302 (8th Cir. 1940); *Farrall v. D.C. Amateur Athletic Union*, 153 F.2d 647 (D.C. Cir. 1946); *Nat'l War Labor Bd. v. Montgomery Ward & Co.*, 144 F.2d 528 (D.C. Cir.

---

[4]     *Cf. Driscoll v. George Washington Univ.*, 2012 WL 3900716, *6 (D.D.C. Sept. 10, 2012) (Huvelle, J.) (applying step two of the *Shady Grove* test as articulated by Justice Stevens' concurrence and holding that the opt-in provision of the D.C. Wage Payment and Collection Law, D.C. Official Code §§ 32-1301, *et seq.*, "confers substantive rights such that application of [Federal] Rule [of Civil Procedure] 23 in these circumstances would violate the Rules Enabling Act," and thus applies in diversity, as the "opt-in requirement 'is part of [the District's] framework of substantive rights or remedies'") (quoting *Shady Grove*, 130 S. Ct. at 1449 (Stevens, J., concurring)).

1944); *Callaway v. Hamilton Nat. Bank of Wash.*, 195 F.2d 556 (D.C. Cir. 1952)). The *3M* decision characterized the Advisory Committee notes as "clearly explain[ing] that Rule 12(d) links Rule 12 with Rule 56 to provide the exclusive means for federal courts to adjudicate a case on the merits based on matters outside the complaint." *3M*, 842 F. Supp. 2d at 98.

This is not a persuasive reading of the notes, nor of the cases it applied or those cases cited by *3M* which were decided shortly after and construed the 1946 amendments. As an initial matter, neither the notes themselves nor a single case cited by the *3M* court uses the term "exclusive" in this context; that is solely the court's gloss. Nor does the text of Rules 12 or 56 use that term or its substantive equivalent.

Further, the 1946 Advisory Committee notes simply indicate what has today become black letter law—that motions filed under the Federal Rules of Civil Procedure, whether styled as "speaking motions" or otherwise, should generally be treated as motions for summary judgment, where they attach factual averments such as affidavits that go to the merits of the allegations. As *3M* noted, it is by now an "unobjectionable proposition that when a complaint adequately states a claim, it may not be dismissed" under Rule 12 "based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or fail to prove his claim to the satisfaction of the factfinder." *Bell Atl. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

Similarly, the cases cited by *3M* do not speak at all to the question of when courts may dismiss cases upon motions based on state-created substantive immunity rules.[5] None of the

---

[5] *Gallup* involved a court taking notice of unrebutted materials establishing that the plaintiff did not own corporation stock at the time the suit began—a prerequisite to maintaining the action. 120 F.2d at 93. *Leimer* reversed the decision of a district court which improperly dismissed a complaint under Rule 12 after the district court decided the underlying merits of the case, based merely on inferences from the complaint and other materials, without legal support

28

1946 advisory committee language cited by *3M* or early cases construing the 1946 amendments discussed statute-based immunities implementing substantive rights, and none says anything to negate through the Federal Rules of Civil Procedure the application of a state-created right that is narrowly targeted to constitutionally-protected activities. And, indeed, that is not surprising, as Congress spoke to *that* question separately and well before the 1946 amendments, enacting in 1934 the command in the Rules Enabling Act, applicable ever since, that "the Rules 'shall not abridge, enlarge, or modify any substantive right.'" *Semtek*, 531 U.S. at 503 (quoting 28 U.S.C. § 2072(b)).

*Burlington Northern, Shady Grove* and *Byrd*—In *Burlington Northern*, as discussed above, the Supreme Court posited a situation where a federal appellate court would deem a penalty to be warranted, but that a penalty of 10% of the judgment would be unjustified. 480 U.S. at 7–8. In such a situation, were both Federal Rule of Appellate Procedure 38 and the state law to apply, the appellate court would be forced to either exceed its authority under Rule 38 or to violate the mandatory state-law obligation. As a practical matter, the two laws could not operate "side by side." *Id.* at 7. Similarly, in *Shady Grove*, as discussed above, there was no

---

external to federal procedural rules. 108 F.2d at 304-06. *Farrall* stands for the now well-established proposition that where an affidavit concerning material facts is filed in support of a 12(b)(6) motion to dismiss, the pleading will be reviewed as a motion for summary judgment and will not be granted "if the complaint and the affidavit show that there are genuine issues of material facts and … the complaint, if proved . . . , states a claim for which relief can be granted." 153 F.2d at 650. *National War Labor Board* held that dismissal of the complaint was warranted based on unrebutted statements from a defendant administrative agency, reasoning that the agency did not contemplate enforcement of an administrative determination, thereby gutting plaintiff's claims of injury. 144 F.2d at 530-31. Finally, *Callaway* reaffirmed that where factual affidavits are attached to Rule 12(b)(6) motions to dismiss, a federal court "must determine whether, if all conflicting inferences were to be resolved in plaintiff's favor at a trial, he would nevertheless not be legally entitled to a recovery. For if such be the case, then clearly he has failed to state a claim on which relief can be granted (Rule 12(b)(6)), and he has also failed to raise an issue of material fact or show that defendant is not entitled to judgment as a matter of law (Rule 56)." 195 F.2d at 559. None of these decisions undermines application of the Act in the diversity context.

practical way for the trial judge to apply Federal Rule 23 and the state law "side by side." 130 S. Ct. at 1441. Here, there is no such unavoidable clash in application of the Act—whether on a straight reading of Rules 12 and 56 or whether applying the canons of construction that call for harmonization of the federal and state rules alleged to be in conflict.

Likewise, *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958), does not undermine the Act's application in federal court.  Citing *Byrd*, Judge Wilkins in a subsequent opinion in the *3M* matter has now suggested that the Act is inapplicable in federal court because under the Act a judge, not a jury, decides whether the Act's protections apply. *3M Co. v. Boulter*, Am. Mem. Op. and Order, 2012 WL 5245458, at 4 (D.D.C. Oct. 24, 2012).

As with the other authorities relied on in the *3M* rulings*, Byrd* likewise does not support the conclusion reached there*.  Byrd* held inapplicable in diversity actions a state law assigning to the trial judge the task of deciding a specific question of fact necessary for determining whether an immunity existed—specifically whether a defendant qualified as an "owner", and as such was immune from personal injury claims made outside the worker's compensation regime. 356 U.S. at 527.  The Act does no such thing; the immunity under the Act turns on whether the movant has shown a "likelihood of success" on the merits, which may well entail, depending on the particulars of a case, resolution of a pure question of law or quite separate from any factual determination or weighing.  *Accord, e.g.*, *Manufactured Home Communities, Inc. v. County of San Diego,* 655 F.3d 1171, 1176–77 (9th Cir. 2011) [in a California Anti-SLAPP Act case] ("In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's

30

attempt to establish evidentiary support for the claim") (quoting *Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811, 821 (Cal. 2002) (internal quotation marks and citations omitted)). Indeed, in assessing for purposes of reviewing decisions disposing of motions for preliminary injunctions determinations, which likewise call for an assessment of the likelihood of success on the merits, the Circuit has readily found such determinations to be "primarily on questions of law." *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 614 (D.C. Cir. 1992).

In addition, unlike in *Byrd*, where the Court's conclusion depended in part on the observation that the state rule in question there was "*not* a rule intended to be bound up with the definition of the rights and obligations of the parties," *id.* at 536 (emphasis added), the paramount purpose of the Act, as established above, is to provide parties with speech rights-driven protections creating qualified immunity.  Supreme Court precedent does not support the reasoning or conclusion of *3M*.

*Metabolife*—Further, and contrary to the *3M* decision's intimation, Ninth Circuit precedent likewise does not support that decision's conclusion. *Metabolife* does not stand for the proposition, ascribed to it by *3M,* that "Rules 12 and 56 are so broad as to cover or answer the same question as the California statute," *3M*, 842 F. Supp. 2d at 109. Rather, the Ninth Circuit has *repeatedly* held, including before and after *Metabolife*, that California's substantive immunity squarely applies in federal court.  *See Newsham*, 190 F.3d at 970–73; *Batzel*, 333 F.3d at 1025–26; *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005); *Hilton*, 599 F.3d at 900 n.2. Indeed, *Metabolife expressly* left intact *Newsham*'s holding, and addressed only the California anti-SLAPP statute's discovery-stay provision, which it declined to apply because in its view the "discovery-limiting aspects of" the California act "collide with the discovery-

31

allowing aspects of Rule 56." *Metabolife*, 264 F.3d at 846. *Metabolife* held that discovery was appropriate on an issue as to which the relevant "information is in the defendants' exclusive control, and may be highly probative," *id.* at 847, a holding not particularly relevant to the question of whether the Act applies in the first place.   *3M* was wrong in its suggested characterization of Ninth Circuit law after *Metabolife*, and to the extent it relied on *Metabolife* to support its refusal to apply the Act's protections in this diversity case, that reliance is misplaced.

For all these reasons, Rules 12 and 56 do not conflict with the Act's application in diversity matters.

2.      The Act does not conflict with Rule 41(b).

The *3M* decision's secondary reason for refusing to apply the Act is likewise unpersuasive.  It held that the Act's provision that dismissal under Section 16-5502 shall be with prejudice conflicts with Federal Rule of Civil Procedure 41(b), which provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." *3M*  determined that Rule 41(b)'s clause "unless the dismissal order states otherwise" creates a grant of categorical discretion to a district judge to choose the prejudicial effect, if any, of any dismissal under any rule (with the three exceptions listed in the rule). *See 3M*, 842 F. Supp. 2d at 104–05.

Again, respectfully, that is flatly incorrect.  There is no conflict between Rule 41(b) and the Act.  The last sentence of Rule 41(b) simply sets forth a default rule of construction of otherwise ambiguous language in dismissal orders; it does not by its terms confer discretion on

district courts. Nor was that its purpose: "The purpose of the last sentence of Fed. R. Civ. P. 41(b) is to establish a procedure for construing ambiguous dismissal orders—that is, those which do not state whether they are with or without prejudice. The Rule seeks to eliminate the necessity of speculating as to the court's intent when it dismisses without specifying whether the dismissal is with prejudice." 27A Tracy Bateman Farrell, John R. Kennel *et al.*, *Federal Procedure, Lawyers Ed.* § 62:557 (Mar. 2012); *see also Weissinger v. United States*, 423 F.2d 795, 798 (5th Cir. 1970) (Rule 41(b) "establishes a procedure for construing the general and ambiguous dismissal order, one which does not say whether it is with or without prejudice."); *Sack v. Low*, 478 F.2d 360, 364 (2d Cir. 1973) (similar).

Thus, federal courts sitting in diversity have repeatedly applied states' mandatory dismissal-with-prejudice provisions like that of the Act here. For example, a Tennessee statute says that certain claims are "subject to" dismissal with prejudice and a Minnesota statute similarly requires dismissal with prejudice where there is a failure to comply with certain expert testimony procedures in complex negligence cases. *See* Tenn. Code Ann. § 29-26-122 (2012); Minn. Stat. § 145.682 (2011). These provisions have been regularly applied by federal district courts with no Rule 41(b) barrier. *See, e.g.*, *Carmen v. Mayo Found.*, 1996 WL 137272, *1 (8th Cir. 1996) ("[F]ailure to comply with Minnesota's expert affidavit requirements mandated dismissal with prejudice."); *Williams v. United States*, 754 F. Supp. 2d 942, 954 (W.D. Tenn. 2010) (similar). Such application would not make sense if Rule 41(b) precluded federal courts, sitting in diversity, from following state law provisions mandating that a dismissal is required to be with prejudice. With Rule 41 correctly understood as simply a default rule, it does not conflict with the Act's proviso that where the defendant has established that it is entitled under Section 16-5502 to immunity from suit, dismissal must be with prejudice.

Further, the Act's provision concerning dismissal with prejudice plainly promotes the Council's speech-rights-promoting policy goal of combating the use of "litigation itself" as "the plaintiff's weapon of choice" in SLAPPs "wielded to chill the speech of the defendant and sometimes that of third parties who would otherwise choose to speak out." Comm. Rep. at 4. The conclusion that there is no conflict is thus further reinforced by the guidance from Justice Stevens' *Shady Grove* concurrence, relying on *Semtek*'s construction of Rule 41(b) *itself* to conform it with the Rules Enabling Act, that federal rules should "reasonably be interpreted to avoid th[e] impermissible result" of abridging substantive rights. 130 S. Ct. at 1452 (Stevens, J., concurring) (citing *Semtek*, 531 U.S. at 503). Rule 41(b) readily can and should be interpreted to allow application of the Act's rights-implementing protections.

## II.    Application Of The Act In Federal Court Serves *Erie*'s Twin Aims.

Because Federal Rules of Civil Procedure 12, 41, and 56 and the Act can "exist side by side, . . . each controlling its own intended sphere of coverage without conflict," the second step of the governing test is triggered, and the Act must be applied in this diversity action if its application will serve *Erie*'s twin aims. *Burke*, 685 F.3d at 1108 (quoting *Walker*, 446 U.S. at 752).

Application of the Act's protections in federal court will plainly serve these two related aims, which are (i) avoiding inequitable administration of the laws and (ii) discouraging forum-shopping. *See Hanna*, 380 U.S. at 468; *Burke*, 685 F.3d at 1109; *Walko*, 554 F.2d at 1170–71. First, it would be inequitable to allow the use of a defense to parties subjected to a SLAPP in Superior Court, but deny them the use of that defense in *federal* court, especially since the choice of forum is, in large part, the province of the plaintiff. *See Godin*, 629 F.3d at 91; *see also Hanna*, 380 U.S. at 467 ("The *Erie* rule is rooted in part in a realization that it would be unfair

for the character of the result of a litigation materially to differ because the suit had been brought in federal court."). A rule that may cause a case that would be dismissed if brought in Superior Court to proceed to trial in federal court "would be outcome-determinative in the relevant [*Erie*] sense." *Burke*, 685 F.3d at 1109.

Second, if plaintiffs are subject to the heightened burden of proof set forth in the Act if they file their case in local court, but can avoid being subject to those standards if they file in federal court, that result will promote *precisely* the type of forum-shopping *Erie* was designed to avoid. *See, e.g., Newsham*, 190 F.3d at 973 ("Plainly, if the [California] Anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to forum-shop. Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable advantage in a federal proceeding."). Indeed, such forum-shopping has *already* occurred in the District as a result of the *3M* decision. *See Dean v. NBC*, No. 2011 CA 006055 B, Order at 2 (D.C. Sup. Ct. June 25, 2012) ("Plaintiffs [alleging defamation against a journalist and other parties] wish to discontinue this case and pursue the same matter in Federal Court because [of the *3M* decision] that . . . the Act violated the Federal Rules of Civil Procedure, and was thus unavailable to defamation defendants sued in Federal Court."). The twin aims analysis thus confirms that the Act's protections apply in federal diversity actions.

CONCLUSION

The Act applies in federal diversity actions.

DATE: December 20, 2012                 Respectfully submitted,

                                                IRVIN B. NATHAN
                                                Attorney General for the District of Columbia

35

/s/ Ariel B. Levinson-Waldman

ARIEL B. LEVINSON-WALDMAN, D.C. Bar No. 474429
Senior Counsel to the Attorney General
441 4th Street, NW, Suite 1100S
Washington, DC 20001
Telephone: 202-724-6630
Fax: 202-730-1450
ariel.levinson-waldman@dc.gov


ELLEN A. EFROS
Deputy Attorney General
Public Interest Division


/s/ Andrew J. Saindon

ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov