## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| YASSER ABBAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 12-cv-01565 |
| | ) | |
| FOREIGN POLICY GROUP, LLC, | ) | |
| A DIVISION OF THE WASHINGTON POST | ) | |
| COMPANY, AND | ) | |
| JONATHAN SCHANZER, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## SPECIAL MOTION TO DISMISS PURSUANT TO THE D.C. ANTI-SLAPP ACT

WILLIAMS & CONNOLLY LLP

Kevin T. Baine (Bar No. 238600)
Adam Tarosky (Bar No. 983920)
Elise Borochoff (Bar No. 1006246)

725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbaine@wc.com
atarosky@wc.com
eborochoff@wc.com

*Counsel for Defendant Foreign Policy*
*Group, LLC*

LEVINE SULLIVAN KOCH & SCHULZ, LLP

Nathan E. Siegel (Bar No. 446253)
Seth D. Berlin (Bar No. 433611)
Shaina D. Jones (Bar No. 1002801)

1899 L Street, NW, Suite 200
Washington, DC  20036
Telephone: (202) 508-1100
Facsimile: (202) 861-9888
nsiegel@lskslaw.com
sberlin@lskslaw.com
sjones@lskslaw.com

*Counsel for Defendant Jonathan Schanzer*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I.     THE D.C. ANTI-SLAPP ACT APPLIES IN FEDERAL COURT ........................2

     A.    Abbas Ignores the Overwhelming Authority Applying
         SLAPP Statutes, Including the D.C. Act, in Federal Court ........................2

     B.    The *Erie* Analysis and Governing D.C. Circuit Precedent .........................4

     C.    Under the *Erie* Analysis, the D.C. Act Applies in Federal Court ...............6

          1.    The D.C. Act Does Not Directly Collide with
                 Rules 12 and 56 .....................................................................................6

          2.    The D.C. Act Does Not Directly Collide with
                 Rule 41(b) ...........................................................................................10

          3.    The D.C. Act Confers Substantive Rights and Remedies .................11

          4.    Erie's Twin Aims Are Served by Application of the D.C. Act ........13

II.    THE D.C. ANTI-SLAPP ACT REQUIRES DISMISSAL OF
       PLAINTIFF'S COMPLAINT ..............................................................................14

     A.    The Commentary is an Act in Furtherance of the
         Right of Advocacy on an Issue of Public Interest ......................................14

     B.    Abbas Has Not Established That He is Likely to Succeed
         on the Merits of Each of the Elements of His Claim ..................................15

          1.    Abbas Has Not Established That the Commentary is
                 Capable of a Defamatory Meaning, And In Any Event
                 It Is Protected Opinion .......................................................................15

          2.    Plaintiff is a Public Figure .................................................................17

          3.    Abbas Has Not Established that Defendants Acted
                 With Fault ...........................................................................................19

          4.    Abbas Has Not Established That He Suffered
                 Any Damages ......................................................................................22

CONCLUSION ..........................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Co. v. Boulter,*
   2012 WL 5245458 (D.D.C. Oct. 24, 2012) ...............................................................4

*3M Co. v. Boulter,*
   842 F. Supp. 2d 85 (D.D.C. 2012) ..............................................................3, 5, 6, 8

*Agora, Inc. v. Axxess, Inc.,*
   90 F. Supp. 2d 697 (D. Md. 2000) ...........................................................................16

*Armington v. Fink,*
   2010 WL 743524 (E.D. La. Feb. 24, 2010) ...............................................................9

*Banks v. Kramer,*
   603 F. Supp. 2d 3 (D.D.C. 2009) .............................................................................24

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) .............................................................................7, 12

*Brandenburg v. Ohio,*
   395 U.S. 444 (1969) ..................................................................................................22

*Buckley v. Deloitte & Touche USA LLP,*
   2007 WL 1491403 (S.D.N.Y. May 22, 2007) .........................................................13

*Burke v. Air Serv International,*
   685 F.3d 1102 (D.C. Cir. 2012) ...............................................................4, 5, 6, 13

*Burlington Northern Railroad Co. v. Woods,*
   480 U.S. 1 (1987) .................................................................................................4, 6

*Card v. Pipes,*
   398 F. Supp. 2d 1126 (D. Or. 2004) ....................................................................8, 9

*Chamberlain v. Giampapa,*
   210 F.3d 154 (3d Cir. 2000) .............................................................................10, 13

*Chandok v. Klessig,*
   632 F.3d 803 (2d Cir. 2011) ....................................................................................8

*Diwan v. EMP Global LLC,*
   841 F. Supp. 2d 246 (D.D.C. 2012) ........................................................................3

*Eklund v. City of Seattle Municipal Court,*
   410 F. App'x 14 (9th Cir. 2010) .......................................................................7, 12

*Ellingson v. Walgreen Co.*,
    78 F. Supp. 2d 965 (D. Minn. 1999)...................................................................................11

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938)............................................................................................... passim

*Farah v. Esquire Magazine*,
    863 F. Supp. 2d 29 (D.D.C. 2012).........................................................3, 8, 14, 18

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005)...............................................................9

*G. Heilman Brewing Co. v. Joseph Oat Corp.*,
    871 F.2d 648 (7th Cir. 1989) ............................................................................8

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ............................................................................7

*Garman v. Campbell County. School District No. 1*,
    630 F.3d 977 (10th Cir. 2010) .......................................................................5, 6

*Gasperini v. Center for Humanities, Inc.*,
    518 U.S. 415 (1996) ........................................................................................4

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)........................................................................................22

*Godin v. Schencks*,
    629 F.3d 79 (1st Cir. 2010)..................................................................... passim

*Hanna v. Plumer*,
    380 U.S. 460 (1965)....................................................................................3, 4, 5

*Henry v. Lake Charles American Press, L.L.C.*,
    566 F.3d 164 (5th Cir. 2009) ........................................................................8, 12

*Herbert v. Lando*,
    441 U.S. 153 (1979)........................................................................................11

*Hilton v. Hallmark Cards*,
    599 F.3d 895 (9th Cir. 2010) ........................................................................7, 9

*In re Digital Music Antitrust Litigation*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)..............................................................5

*In re Suprema Specialties, Inc.*,
    285 F. App'x 782 (2d Cir. 2008) ....................................................................13

*In re Zyprexa Products Liability Litigation,*
   2011 WL 5563524 (E.D.N.Y. Nov. 15, 2011)........................................................13

*Lohrenz v. Donnelly,*
   223 F. Supp. 2d 25 (D.D.C. 2002) .....................................................................20

*McFarlane v. Esquire Magazine,*
   74 F.3d 1296 (D.C. Cir. 1996) ......................................................................19, 21

*McFarlane v. Sheridan Square Press,*
   91 F.3d 1501 (D.C. Cir. 1996) ...........................................................................21

*Milam v. State Farm Mutual Automobile Insurance Co.,*
   972 F.2d 166 (7th Cir. 1992) .............................................................................12

*Northon v. Rule,*
   637 F.3d 937 (9th Cir. 2011) ...............................................................................7

*Orian v. Federation International des Droits de L'Homme,*
   2012 WL 994643 (C.D. Cal. Mar. 22, 2012) .......................................................11

*Parisi v. Sinclair,*
   774 F. Supp. 2d 310 (D.D.C. 2011) ....................................................................21

*Parsi v. Daioleslam,*
   --- F. Supp. 2d ---, 2012 WL 4017720 (D.D.C. Sept. 13, 2012)...........................21

*Partington v. Bugliosi,*
   56 F.3d 1147 (9th Cir. 1995) .............................................................................16

*Philadelphia Newspapers, Inc. v. Hepps,*
   475 U.S. 767 (1986)...........................................................................................15

*Sack v. Low,*
   478 F.2d 360 (2d Cir. 1973)...............................................................................10

*Semtek International, Inc. v. Lockheed Martin Corp.,*
   531 U.S. 497 (2001) ..........................................................................................10

*Shady Grove Orthopedic Associates v. Allstate Insurance Co.,*
   130 S. Ct. 1431 (2010)................................................................................ passim

*Sherrod v. Breitbart,*
   843 F. Supp. 2d 83 (D.D.C. 2012)................................................................2, 3, 4

*Tavoulareas v. Piro,*
   817 F.2d 762 (D.C. Cir. 1987) ...........................................................................19

*Tucker v. Fischbein,*
    237 F.3d 275 (3d Cir. 2001)..................................................................................20

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
    190 F.3d 963 (9th Cir. 1999) .........................................................................6, 7, 14

*Waldbaum v. Fairchild Publications, Inc.,*
    627 F.2d 1287 (D.C. Cir. 1980)...........................................................................17

*Walker v. Armco Steel Corp.,*
    446 U.S. 740 (1980)..........................................................................................4, 6

*Weasel v. St. Alexius Medical Center,*
    230 F.3d 348 (8th Cir. 2000) ...............................................................................10

*Weissinger v. United States,*
    423 F.2d 795 (5th Cir. 1970) ...............................................................................10

*Williams v. United States,*
    754 F. Supp. 2d 942 (W.D. Tenn. 2010)..............................................................11

**STATUTES**

28 U.S.C. § 2072 ...........................................................................................................9, 11

Me. Rev. Stat. tit. 14, § 556 ...............................................................................................7

Minn. Stat. § 145.682.......................................................................................................11

N.J. Stat. 2A:53A-26........................................................................................................13

**CODES**

Cal. Code Civ. Proc. § 425.16 ...........................................................................................6

D.C. Code § 16-5502 ......................................................................................1, 11, 14, 15

N.D. Cent. Code § 28-01-46 ............................................................................................10

Tenn. Code § 29-26-122 ..................................................................................................11

**RULES**

Fed. R. Civ. P. 12............................................................................................... passim

Fed. R. Civ. P. 23 ..............................................................................................................5

Fed. R. Civ. P. 41 ....................................................................................................4, 10, 11

Fed. R. Civ. P. 56 ................................................................................................................ passim

OTHER

*Restatement (Second) of Torts* § 590A ........................................................................................24

## INTRODUCTION

Plaintiff's response to Defendants' special motion to dismiss pursuant to the D.C. Anti-SLAPP Act focuses primarily on the argument that the statute does not apply in federal court. But Plaintiff's effort to avoid the application of the statute is unavailing. As demonstrated below, save for the one decision he relies on, the overwhelming majority of courts – including every federal appeals court to confront the issue – has found that anti-SLAPP statutes apply in federal court, including several decisions of this Court applying this statute. The analysis set forth in those decisions is sound.

Turning to the merits of this motion, Plaintiff does not contest that this action "arises out of an act in furtherance of the right of advocacy on issues of public interest." D.C. Code §16-5502. Therefore, under the statute his case must be dismissed unless he is able to him to demonstrate a likelihood of success with respect to *each of the elements* of his defamation claim. *See id.* §16-5502(d). Here, Plaintiff fails to overcome this burden.

First, the grounds set forth in Defendants' opening and reply briefs on their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) demonstrate that Plaintiff's claim is deficient on its face. Moreover, in response to Defendants' Anti-SLAPP motion, Plaintiff not only essentially abandons the bulk of the statements that originally comprised his defamation claim, even with respect to those aspects of the Commentary that he erroneously contends are implicitly statements of fact about him, he submits no evidence at all to try to meet his burden of demonstrating that they are materially false. As such, the Commentary is unquestionably protected opinion based upon disclosed and unchallenged facts.

Finally, Plaintiff wholly ignores the vast record showing that he is a public figure because he has actively participated in controversies that have been raging for many years about his dual

roles as a prominent international businessman and active participant in Palestinian politics. His

efforts to blame Dr. Schanzer's Congressional testimony in 2011 and 2012 for provoking these

controversies are patently absurd, given that they have existed since the 1990s and Abbas has

been filing defamation lawsuits about this subject since 2008. Finally, Abbas submits no

evidence that could constitute clear and convincing evidence of actual malice, or even negligence

by either Defendant. Rather, if anything he continues to devise theories that all point in the

opposite direction.

Finally, as set forth below, the record shows that this is exactly the kind of case the

District was concerned about when it passed the Anti-SLAPP Act. Accordingly, his complaint

should be dismissed with prejudice.

## ARGUMENT

### I.  THE D.C. ANTI-SLAPP ACT APPLIES IN FEDERAL COURT.

#### A.  Abbas Ignores the Overwhelming Authority Applying SLAPP Statutes, Including the D.C. Act, in Federal Court.

Abbas contends that the D.C. Anti-SLAPP Act "cannot be applied by a federal court

sitting in diversity." Opp. to Defs.' Special Motion to Dismiss ("Opp.") at 3. Remarkably, his

brief addresses only in a very cursory fashion the substantial body of case law, including every

federal appellate decision to address the issue, analyzing state Anti-SLAPP acts and reaching the

opposite conclusion. *See* Defs.' Special Motion to Dismiss ("Mem.") at 21 & n.2 (citing more

than twenty such cases). Erroneously suggesting "this is an issue of first impression," Opp. at 3,

Abbas then gives short shrift to several D.C. federal district court decisions recognizing that the

D.C. Act itself would apply in federal court.

First, he incorrectly dismisses *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 85 (D.D.C.),

*appeal docketed*, No. 11-7088 (D.C. Cir. Aug. 30, 2012), as addressing only "retroactivity."

2

Opp. at 13.  But, as described in detail in defendants' opening brief, Mem. at 21, the Court

performed a detailed analysis supporting its conclusion that the Act affords a substantive

protection under D.C. law, including, for example, its burden shifting and attorneys' fees

provisions.  843 F. Supp. 2d at 84-85.  While Judge Leon's focus in *Sherrod* was whether the Act

was a procedural statute that would apply retroactively under D.C. law, *id.*, he expressly also

found that, if the statute were procedural for retroactivity purposes, *Erie* would bar its application

in federal court, but reiterated that the Act was substantive for that purpose as well.  *Id.* at 85

(citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  *See also* Opp. at 13 (conceding that

*Sherrod* held that the D.C. Act has "substantive consequences").  Second, Abbas incorrectly

dismisses the court's decision in *Farah v. Esquire Magazine*, 863 F. Supp. 2d 29 (D.D.C. 2012),

as addressing the D.C. Act "in a footnote" and basing its decision that the Act applies in federal

court based solely on *Sherrod*.  But, in *Farah*, Judge Collyer actually conducted a detailed

analysis of the D.C. Act, invoked decisions of the First, Fifth and Ninth Circuits applying anti-

SLAPP statutes as substantive protections of state law under *Erie*, and dismissed claims for

defamation and related torts.  *Id.* at 36-39.  *See also Diwan v. EMP Global LLC*, 841 F. Supp. 2d

246, 247 n.1 (D.D.C.) (adjudicating but denying motion under D.C. Act because non-moving

parties "are likely to succeed on the merits"), *appeal dismissed*, 2012 WL 556277 (D.C. Cir. Feb.

6, 2012).

While effectively ignoring this substantial body of authority in both D.C. and federal

courts around the country, Abbas's argument is premised almost exclusively on *3M Co. v.*

*Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), *appeal dismissed*, 2012 WL 5897085 (D.C. Cir. Oct

19, 2012).  There, Judge Wilkins analyzed the D.C. Act under *Erie* and *Hanna v. Plumer*, 380

U.S. 460 (1965), and their progeny, including *Shady Grove Orthopedic Assocs. P.A. v. Allstate*

3

*Ins. Co.*, 130 S. Ct. 1431 (2010), to conclude that the D.C. Act conflicts with Federal Rules 12,

41 and 56 and therefore cannot be enforced in federal court.  As explained below, however, that

lone decision and Abbas's arguments which follow from it are erroneous.[1]

### B.   The *Erie* Analysis and Governing D.C. Circuit Precedent

In a decision issued after Judge Wilkins' opinion in *3M*, and not even mentioned by

Abbas, the D.C. Circuit reiterated that the "broad command of *Erie*" is that federal courts sitting

in diversity "'apply state substantive law and federal procedural law.'"  *Burke v. Air Serv Int'l*,

685 F.3d 1102, 1107 (D.C. Cir. 2012) (quoting *Hanna*, 380 U.S. at 465 and citing *Gasperini v.*

*Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).  The first question is whether a federal rule

"answers the question in dispute" or whether the scope of the federal rule "is 'sufficiently broad

to control the issue before the court.'"  *Burke*, 685 F.3d at 1107 (citation omitted); *see also*

*Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) ("The initial step is to determine

whether [the federal rule] is 'sufficiently broad' to cause a 'direct collision' with the state law . . .

thereby leaving no room for the operation of that law.") (quoting *Walker v. Armco Steel Corp.*,

446 U.S. 740, 749-50 (1980)).

Where the federal rule and state statute can both "'can exist side by side'" with "'each

controlling its own intended sphere of coverage without conflict,'" there is no "direct collision"

and a "federal court can simultaneously apply both the federal standard . . . and the District rule,"

*Burke*, 685 F.3d at 1108 (quoting *Walker*, 446 U.S. at 752).  In such circumstances, the federal

---

[1] The *3M* decision had been appealed and consolidated for argument with the appeal in *Sherrod*.  The *3M* case was subsequently settled and the appeal dismissed; a consent motion to vacate the district court's opinion remains pending in the D.C. Circuit.  Jones Reply Exs. 1-3. The remaining appeal in *Sherrod* is scheduled for oral argument on March 15, 2012.  *Id.* Ex. 4. Curiously, in a later opinion in *3M*, Judge Wilkins invoked his earlier opinion, but did not addresses the D.C. Circuit's intervening opinion in *Burke*, addressing application of D.C. rules in federal court, discussed below.  *See 3M Co. v. Boulter*, 2012 WL 5245458 (D.D.C. Oct. 24, 2012).

rule "does not preempt the state rule," and the court then proceeds to the next step in the *Erie*

analysis. *Burke*, 685 F.3d at 1008 (citation omitted). Specifically, the court evaluates whether

the failure to apply state law would frustrate the "twin aims" of *Erie*: "discouragement of forum-

shopping and avoidance of inequitable administration of the laws," *Hanna*, 380 U.S. at 468; *see*

*also Burke*, 685 F.3d at 1108 (same, quoting *Hanna*).

Where there is a direct collision, however, the court must analyze whether "application of

the federal rule 'represents a valid exercise' of the 'rulemaking authority [under] the Rules

Enabling Act,'" bearing in mind the statutory "mandate that federal rules 'shall not abridge,

enlarge or modify any substantive right'" under state law. *Shady Grove*, 130 S. Ct. at 1451

(Stevens, J.) (quoting 28 U.S.C. § 2072); *see also Burke*, 685 F.3d at 1108 (same). This "second

step of the inquiry may well bleed back into the first" if a federal rule would curtail a state

substantive right because the court must also then "consider whether the rule can reasonably be

interpreted to avoid that impermissible result." *Shady Grove*, 130 S. Ct. at 1452 (Stevens, J.).

"A federal rule, therefore, cannot govern a particular case in which the rule would displace a

state law that is procedural in the ordinary use of the term but is so intertwined with a state right

or remedy that it functions to define the scope of the state-created right." *Id.*[2]

---

[2] In *Shady Grove*, Justice Scalia announced the judgment of the Court that Fed. R. Civ. P.
23, which sets forth the conditions under which a "'class action may be maintained,'" supplanted
a state rule providing that certain claims "'may *not* be maintained as a class action,'" because
they "attempt[] to answer the same question." 130 S. Ct. at 1437-38 (Scalia, J.). But, he
marshaled five votes only with respect to Parts I and II-A of his opinion. Justice Stevens
concurred in part and concurred in the judgment, and his more narrow opinion, displaying an
added sensitivity to state interests, garnered five votes with respect to the balance of the analysis.
*See also Shady Grove*, 130 S. Ct. at 1463 n.2 (Ginsburg, J., dissenting). Subsequent courts have
generally concluded that "'Justice Stevens' concurrence is the controlling opinion by which
interpreting courts are bound,'" *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415
(S.D.N.Y. 2011) (citing cases); *see also Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d
977, 983 n.6 (10th Cir. 2010) (same), *cert. denied*, 132 S. Ct. 95 (2011), or at a minimum that it
controls everything other than Parts I and II-A of Justice Scalia's opinion, *see 3M*, 842 F. Supp.

### C.    Under the *Erie* Analysis, the D.C. Act Applies in Federal Court.

#### 1.    The D.C. Act Does Not Directly Collide with Rules 12 and 56.

Virtually every federal court – including every federal appellate court – to have considered the question has recognized that anti-SLAPP statutes can exist side by side with Rules 12 and 56. As the Ninth Circuit held in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), California's anti-SLAPP statute – which, like the D.C. Act, requires a plaintiff to demonstrate a "probability that [he] will prevail," Cal. Code Civ. P. § 425.16(b)(1) – "'can exist side by side'" with the Federal Rules, "'each controlling its own intended sphere of coverage without conflict.'" 190 F.3d at 972 (citation omitted). The court explained that a defendant "may bring" an anti-SLAPP motion in federal court and, "[i]f unsuccessful, the litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment." *Id.* Thus, the court "fail[ed] to see how the prior application of the anti-SLAPP provisions will directly interfere with the operation of" Rules 12 or 56 since there were no "federal interests that would be undermined by application of the anti-

---

2d at 95 n.7. With no disrespect intended to Judge Wilkins, the *3M* decision both relies on portions of Justice Scalia's opinion that are plainly not controlling, *see id.* at 110 ("federal rule is valid so long as it 'really regulates procedure'") (quoting *Shady Grove*, 130 S. Ct. at 1442 (Scalia, J., Part II-B)), and incorrectly asserts that Justice Stevens "did not (and could not) overrule" the "Supreme Court's unanimous opinions in cases such as *Walker* and *Burlington Northern*," 842 F. Supp. 2d at 95 n.7, even though Justice Stevens' test was lifted virtually verbatim from those very decisions. *See Burlington Northern*, 480 at 4-5 ("The initial step is to determine whether [the federal rule] is 'sufficiently broad' to cause a 'direct collision' with the state law . . . thereby leaving no room for the operation of that law.") (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980)). In any event, in *Burke*, the Court of Appeals subsequently – *i.e.*, post-*3M* – found it unnecessary to parse the distinctions between the *Shady Grove* opinions, instead relying on them interchangeably as part of the long line of prior Supreme Court precedent applying state substantive laws in federal court. *See Burke*, 685 F.3d at 1107-08 (invoking Justice Stevens' "sufficiently broad to control the issue before the Court" formulation); *id.* at 1108 (invoking Justice Scalia's "answer the question in dispute" formulation). To the extent the nuances of *Shady Grove* are germane to the Court's analysis, defendants respectfully refer to the District's discussion of the Supreme Court's *Erie* precedent, including *Shady Grove*, set forth in its *amicus* brief, at 7-12 and 29-31.

SLAPP provisions" and "California ha[d] articulated the important, substantive state interests furthered by the" statute. *Id.* at 972-73. *See also Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("Because the California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well"); *Hilton v. Hallmark Cards*, 599 F.3d 895, 900 n.2 (9th Cir. 2010) ("Applying the familiar framework of [*Erie*] and its progeny, we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction.") (citation omitted). Thus, the Ninth Circuit similarly upheld application in federal court of Oregon's anti-SLAPP statute, which also requires a plaintiff to establish a "probability that [she] will prevail on the claim." *See Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009); *see also Northon v. Rule*, 637 F.3d 937, 938-39 (9th Cir. 2011) (awarding attorneys' fees under Oregon statute because "[t]he entitlement to fees and costs enhances the anti-SLAPP law's protection of the state's 'important, substantive' interests") (citation omitted); *Eklund v. City of Seattle Mun. Ct.*, 410 F. App'x 14, 14 (9th Cir. 2010) (same for Washington anti-SLAPP statute which "grants immunity" for expression covered by act).

Similarly, applying *Shady Grove*, the First Circuit explained that the "similarities between [Maine's anti-SLAPP statute] and Rules 12 and 56 as mechanisms to efficiently dispose [of] meritless claims before trial occurs does not resolve the issue." *Godin v. Schencks*, 629 F.3d 79, 89 n.16 (1st Cir. 2010).[3] Rather, "Federal Rules 12(b)(6) and 56 are addressed to different (but related) subject-matters," and do not "attempt[] to answer the same question" as the anti-SLAPP act. *Id.* at 88. Indeed, as Abbas himself concedes, "it is 'not the province of either

---

[3] The Maine statute requires a plaintiff to demonstrate that "'the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.'" *Godin v. Schencks*, 629 F.3d 79, 82 (1st Cir. 2010) (quoting Me. Rev. Stat. tit. 14, § 556).

Rule 12 or Rule 56 to supply substantive defenses or the elements or plaintiff's proof to causes

of action, state or federal.'" Opp. at 11 (citation omitted). Unlike the federal rules, the First

Circuit recognized, an anti-SLAPP statute provides a substantive limitation on state law where

"the claims in question rest on the defendant's protected petitioning conduct" and "the plaintiff

cannot meet the special rules . . . created to protect such petitioning activity against lawsuits."

*Id.* at 89. Because the anti-SLAPP statute is "'so intertwined with a state right or remedy that it

functions to define the scope of the state-created right,' it cannot be displaced by Rule 12(b)(6)

or Rule 56." *Id.* (citation omitted).[4]  *See also Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d

164, 170 (5th Cir. 2009) (Louisiana statute, requiring plaintiff to show "probability of success on

the claim," provides substantive immunity applicable in federal court); *Chandok v. Klessig*, 632

F.3d 803, 812 (2d Cir. 2011) (if satisfied, New York statute would apply).

     In addition, the actual experience of courts around the country supports the conclusion

that anti-SLAPP statutes can and do exist side by side with Rules 12 and 56. *See, e.g.*, *3M*, 842

F. Supp. 2d at 111-20 (denying anti-SLAPP motion but granting Rule 12(b)(6) motion); *Farah*,

863 F. Supp. 2d at 36-40 (rejecting *3M*'s determination that D.C. Act does not apply in federal

court and dismissing defamation claim under both D.C. Act *and* Rule 12(b)(6)); *Card v. Pipes*,

---

[4] Noting that the allocation of the burden of proof and the provision for attorney's fees are typically substantive features of state law applied in diversity actions, *id.*; *see also* Opp. at 10-11 (conceding same), the *Godin* court also relied on the fact that Maine, like the District of Columbia, "itself has general procedural rules which are the equivalents of Fed. R. Civ. P. 12(b)(6) and 56." 629 F.3d at 88. This "further supports the view that Maine has not created a substitute to the Federal Rules, but instead has created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities." *Id.* Thus, "there is no indication that Rules . . . 12 and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Id.* (citation omitted); *see also, e.g.*, *G. Heilman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989) (en banc) ("The Supreme Court has acknowledged that the provisions of the Federal Rules of Civil Procedure are not intended to be the exclusive authority for actions to be taken by district courts.") (citation omitted).

398 F. Supp. 2d 1126, 1136-37 (D. Or. 2004) (granting motions under both Oregon statute and

Rule 12(b)(6)); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1140, 1149-50 (S.D.

Cal. 2005) (same under California statute and Rule 12(b)(6)); *Armington v. Fink*, 2010 WL

743524, at *3 n.2 (E.D. La. Feb. 24, 2010) (Louisiana anti-SLAPP statute "does not directly

collide with Rule 56. Rule 56 summary judgment remains available to the parties . . . ."). As the

Ninth Circuit explained in *Hilton*:

> [A]n anti-SLAPP motion requires the court to ask, first, whether
> the suit arises from the defendant's protected conduct and, second,
> whether the plaintiff has shown a probability of success on the
> merits. If the first question is answered in the negative, then the
> motion must fail, even if the plaintiff stated no cognizable claim.
> Of course, if a plaintiff stated no cognizable claim, then the
> defendant would be entitled to dismissal under Rule 12(b)(6).
> Thus, a Rule 12(b)(6) motion to dismiss may succeed where an
> anti-SLAPP motion to strike would not.
>
> The converse is also true. The second stage of the anti-SLAPP
> inquiry . . . is similar to the one courts make on summary
> judgment, though not identical. Thus, if a plaintiff has stated a
> legal claim but has no facts to support it, a defendant could prevail
> on an anti-SLAPP motion, though he would not have been able to
> win a motion to dismiss.

599 F.3d at 901-02. Thus, applying anti-SLAPP statutes in federal court presents no discernible

conflict with Rules 12 or 56.[5]

---

[5] Abbas relies on the *3M* opinion's long discussion of the 1946 advisory committee notes to Rule 12 and decisions from the 1940s addressing the allocation of cases between Rules 12 and 56. Opp. at 6, 9. As the District explains in its *amicus* brief, at 27-29, neither those advisory committee notes nor those early judicial decisions addresses the application of state law protections in federal court under *Erie* nor states that Rules 12 or 56 are the exclusive method of invoking such state protections. Regardless, even had they done so, they would be unable to change the statutory imperative of the Rule Enabling Act that federal rules be interpreted so as to "not abridge, enlarge or modify any substantive right" under state law. 28 U.S.C. § 2072(b).

## 2.     The D.C. Act Does Not Directly Collide with Rule 41(b).

Abbas also contends that the D.C. Act "wholly strips a federal court of the discretion it otherwise has" under Rules 12(b) and 41 because it "mandates . . . dismissal with prejudice." Opp. at 7.  In fact, Rule 12(b) is silent on this issue and Rule 41(b) "sets forth nothing more than a default rule for determining the import of a dismissal" which might otherwise be ambiguous. *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001).  As Judge Friendly explained in *Sack v. Low*, 478 F.2d 360, 364 (2d Cir. 1973), the provision in Rule 41(b) "permitting a judge to specify that dismissal is without prejudice would seem to have been designed for cases in which the judge has discretion whether to dismiss, *e.g.*, for want of prosecution, where his decision might be affected by determination whether dismissal should be with or without prejudice, not for cases which he must dismiss as a matter of law." *See also Weissinger v. United States*, 423 F.2d 795, 798 (5th Cir. 1970) (en banc) ("Rule 41(b) . . . could not be plainer.  It establishes a procedure for construing the general and ambiguous dismissal order, one which does not say whether it is with or without prejudice. . . .  This sentence seeks to avoid 'any need for speculation as to the intent of the court and the effect of its dismissal order where the order fails to indicate whether or not it is with prejudice.'") (citation omitted).

For this reason, numerous courts have concluded that state laws mandating dismissal with prejudice must be enforced in diversity actions.  *See, e.g.*, *Weasel v. St. Alexius Med. Ctr.*, 230 F.3d 348, 351, 353 (8th Cir. 2000) (Under North Dakota expert affidavit statute, "designed to minimize frivolous claims" by mandating dismissal with prejudice, district court "*had to dismiss* the case;" otherwise "it would render the mandatory dismissal language . . . useless.") (citing N.D. Stat. Cent. Code § 28-01-46) (emphasis in original); *Chamberlain v. Giampapa*, 210 F.3d 154, 162-63 (3d Cir. 2000) (affirming dismissal with prejudice, as required by New Jersey

affidavit of merit statute and state law interpreting it); *Ellingson v. Walgreen Co.*, 78 F. Supp. 2d

965, 969 (D. Minn. 1999) ("failure to comply with Minnesota's expert affidavit requirements

mandated dismissal with prejudice") (citing Minn. Stat. § 145.682); *Williams v. United States*,

754 F. Supp. 2d 942, 954 (W.D. Tenn. 2010) (dismissal with prejudice mandated by similar

Tennessee statute) (citing Tenn. Code § 29-26-122). *Cf. Orian v. Fed'n Int'l des Droits de

L'Homme*, 2012 WL 994643, *1 (C.D. Cal. Mar. 22, 2012) (voluntary dismissal by motion under

Fed. R. Civ. P. 41(a), which requires court order on terms that the court considers proper, could

"not automatically escape the mandatory attorneys' fees and costs due to a prevailing defendant

on an anti-SLAPP motion"). In short, there is simply no conflict with Rule 41(b) in applying a

state statute mandating dismissal with prejudice.[6]

### 3.    The D.C. Act Confers Substantive Rights and Remedies.

Because "federal rules 'shall not abridge, enlarge or modify any substantive right'" under

state law, the court must "consider whether the rule can reasonably be interpreted to avoid the

impermissible result," particularly where the federal rule "would displace a state law that is . . .

so intertwined with a state right or remedy that it functions to define the scope of the state-

created right." *Shady Grove*, 130 S. Ct. at 1451-52 (Stevens, J.) (quoting 28 U.S.C. § 2072). In

this regard, Abbas characterizes the D.C. Act as "'a summary dismissal procedure that the

Defendants . . . seek to clothe in the costume of the substantive right of immunity'" and then

---

[6] In passing, Abbas appears to contend that the provision of the D.C. Act staying discovery conflicts with the federal rules. *See* Opp. at 2. But both the Act and the federal rules permit discovery where needed to respond effectively to an otherwise dispositive motion. *See, e.g.*, D.C. Code § 16-5502(c)(2) (allowing "targeted discovery" if needed "to defeat the motion"); Fed. R. Civ. P. 56(d) (allowing discovery if needed to "present facts essential to justify its opposition"). And, Abbas fails to explain how limiting discovery to protect defendants' expressive activities collides with the federal rules given that courts routinely do so in cases challenging speech for similar reasons. *See, e.g.*, *Herbert v. Lando*, 441 U.S. 153, 178-79 (1979) (Powell, J., concurring) ("district court has a duty to consider First Amendment interests" when supervising discovery in defamation actions).

asserts that "'this is largely a masquerade.'" Opp. at 14 (citation omitted).[7] This contention simply ignores the stated purpose of the statute and the interpretation of it and similar statutes by the overwhelming majority of courts.[8]

There is no question that D.C. could simply abolish the tort of defamation or, as Abbas concedes, could "simply grant a defendant an immunity [from SLAPPs] similar to existing qualified or absolute immunities." Opp. at 11. It can therefore also choose a less extreme course: limiting causes of action challenging expressive conduct to instances where a plaintiff can make a threshold showing of merit. *See Godin*, 629 F.3d at 91 (federal rules do not "preclude additional mechanisms meant to curtail rights-dampening litigation through the modification of pleading standards"); *Milam v. State Farm Mut. Auto. Ins. Co.*, 972 F.2d 166, 170 (7th Cir. 1992) (Posner, J.) ("where a state in furtherance of its substantive policy makes it more difficult to prove a particular type of state-law claim," rule "will be given effect in a diversity suit as an expression of state substantive policy"). Indeed, state statutes requiring a similar threshold showing as a condition of maintaining an action, and that reflect a policy

---

[7] In addressing this issue, Abbas improperly relies on Part II-B of Justice Scalia's opinion in *Shady Grove. See, e.g.*, Opp. at 13 (citing *Shady Grove*, 130 S. Ct. at 1442 (Scalia, J., Part II-B)), which is not controlling under any interpretation of that decision, *see* note 2 *supra*.

[8] *See, e.g.*, Mem. at 20-21; Jones Ex. 37 (committee report) at 1 (statute "incorporates substantive rights with regard to a defendant's ability to fend off lawsuits filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view"); *id.* at 20 (statute "provides a defendant to a SLAPP with substantive rights to expeditiously and economically dispense [with] litigation aimed to prevent their engaging in constitutionally protected actions on matters of public interest"); *id.* at 4 (D.C. Act "[f]ollow[s] the lead of other jurisdictions, which have similarly extended absolute or qualified immunity to individuals engaging in protected actions"); *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) (California statute provides "a substantive immunity from suit"); *Eklund v. City of Seattle Mun. Ct.*, 410 F. App'x 14, 14 (9th Cir. 2010) (Washington statute "grants immunity"); *Godin*, 629 F.3d at 85 (Maine statute designed "'to protect speakers from the trial itself rather than merely from liability'") (citation omitted); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 181 (5th Cir. 2009) (Louisiana statute "embodies a legislative determination that parties should be immune from certain abusive tort claims that have the purpose or effect of imperiling First Amendment rights").

judgment of that state about the balance between authorizing tort claims and protecting other

interests, are routinely enforced by federal courts in diversity actions.[9]  Because, in addressing

the *Erie* question, the Court is obliged to apply federal rules in a manner that does not abridge

state law substantive rights and remedies, so as not to violate the Rules Enabling Act, the D.C.

Anti-SLAPP statute can and should be applied in federal court.

### 4.   *Erie*'s Twin Aims Are Served by Application of the D.C. Act.

Applying the D.C. Act also serves the "twin aims of the *Erie* rule:  discouragement of

forum shopping and an inequitable administration of the laws."  *Godin*, 629 F.3d at 91 (citations

omitted); *see also Burke*, 685 F.3d at 1108.  Because the statute "substantively alters" claims

arising from advocacy on a matter of public interest "by shifting the burden to the plaintiff,"

thereby "altering the showing the plaintiff must make," and by allowing "courts to award

attorney's fees to prevailing defendants," not applying the statute in federal court would "result

in an inequitable administration of justice between" state court and federal court.  *Godin*, 629

F.3d at 91-92.  Likewise, "the incentives for forum shopping would be strong:  electing to bring

state-law claims in federal as opposed to state court would allow a plaintiff to avoid [the

---

[9] *See, e.g.*, *In re Suprema Specialties, Inc.*, 285 F. App'x 782, 784 (2d Cir. 2008) (enforcing New Jersey affidavit of merit in federal court and rejecting challenge under *Erie* that statute "does not apply because it conflicts with the Federal Rules of Civil Procedure") (applying N.J. Stat. 2A:53A-26, requiring plaintiff in professional malpractice action to submit threshold affidavit showing "a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices"); *Chamberlain*, 210 F.3d at 161 (affidavit of merit statutes are considered "substantive state law"); *In re Zyprexa Prods. Liab. Litig.*, 2011 WL 5563524, at *3-4 (E.D.N.Y. Nov. 15, 2011) (rejecting challenge under *Erie* to enforcement of Ohio requiring affidavit of merit as condition "to establish the adequacy of the complaint," and noting that a "number of the United States Courts of Appeals have concluded that similar state-law affidavit requirements are substantive, rather than procedural, under *Erie*") (citations omitted); *Buckley v. Deloitte & Touche USA LLP*, 2007 WL 1491403, at *14 (S.D.N.Y. May 22, 2007) (Pennsylvania Rule of Civil Procedure requiring affidavit of merit applied in New York federal court).

statute's] burden-shifting framework . . . and circumvent any liability for a defendant's fees and costs." *Id.* at 92; *see also Newsham*, 190 F.3d at 973 ("Plainly, if the [California] anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum.  Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding.").  "Such an outcome would directly contravene *Erie*'s aims." *Godin*, 629 F.3d at 92.

Because the D.C. Act does not directly collide with the federal rules and applying it serves the twin aims of *Erie*, it may properly be invoked in federal court.

## II.    THE D.C. ANTI-SLAPP ACT REQUIRES DISMISSAL OF PLAINTIFF'S COMPLAINT.

Plaintiff first suggests that these Defendants somehow fall out of the protection of the Anti-SLAPP act because they are not "normal," "middle-class" Americans to which the statute should apply, but rather are "sophisticated people in the political arena."  Opp. 1, 18-19.  Plaintiff's implication that persons such as Dr. Schanzer or the editors of FP are abnormal and something other than middle class Americans, along with the suggestion that the statute's reach depends upon that kind of stereotyping, is both troubling and devoid of any basis in law.  Nowhere does the Act state that its applicability is limited in any such way, and with respect to FP, courts have already applied the statute to media entities.  *See, e.g.*, *Farah*, 863 F. Supp. 2d at 31, 36-39 (granting special motion to dismiss under D.C. Act filed by Hearst Communications).

### A.    The Commentary is an Act in Furtherance of the Right of Advocacy on an Issue of Public Interest.

In fact, the only criteria for invoking the statute is whether Defendants engaged in "an act in furtherance of the right of advocacy on issues of public interest."  D.C. Code §16-5502(a).

Defendants' opening brief demonstrated that the Commentary is such an act for multiple reasons, and Plaintiff does not contest them. Therefore, this Court must grant the special motion to dismiss unless Plaintiff demonstrates that his claim is "likely to succeed on the merits." D.C. Code § 16-5502(a). This standard plainly requires more than the mere recitation of contentions in the pleadings, and requires evidence that actually demonstrates that his claim is likely to succeed on the merits. Plaintiff's Opposition, however, contains virtually no evidence of anything, and certainly none that demonstrates his defamation claim is likely to succeed on the merits.

**B.** **Abbas Has Not Established That He is Likely to Succeed on the Merits of Each of the Elements of His Claim.**

  **1.** **Abbas Has Not Established That the Commentary is Capable of a Defamatory Meaning, And In Any Event It Is Protected Opinion.**

For all of the reasons stated in Defendants' contemporaneously filed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Reply in further support, as a matter of law Plaintiff's claim for supposed "libelous questions" is not capable of a defamatory meaning, and even if it is it would be constitutionally protected opinion. *See* Defs.' Mem. in Supp. of Motion to Dismiss ("MTD Mem.") at 4-13; Defs.' Reply in Supp. of Motion to Dismiss ("MTD Reply") at 3-11. On these grounds alone, the special motion to dismiss should be granted.

Plaintiff's Opposition to this motion merely reinforces these conclusions. Though the Complaint alleges that multiple "details" in the Commentary about him and his businesses are false, it is Plaintiff's burden to prove falsity in a defamation action. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986). Therefore, for purposes of this motion, Abbas must demonstrate that he is likely to succeed in proving that any alleged defamatory statement is false. But Plaintiff has provided no evidence at all with respect to the specific statements in the Commentary the Complaint appeared to take issue with. He does not even dispute that he or his

companies removed from the Internet their own publication that the Commentary had linked to as a source. As such, virtually every detail in the Commentary about Plaintiff and his businesses, and well as those about his brother and his businesses, are wholly unchallenged. Remarkably, this is even the case for statements in the Commentary that Plaintiff erroneously asserts are implicitly statements of fact about him and thus the basis of his defamation claim, such as Mohammed Rachid's allegation that plaintiff's *father* has "socked away $100 million in ill-gotten gains" or that some Palestinians fear retribution from PA security forces if they criticize his *father*. Opp. to Defs.' Motion to Dismiss ("MTD Opp.") at 2, 7, 11. Putting aside that these allegations are not "of and concerning" Plaintiff, his Opposition provides not a scintilla of evidence that either of these assertions is false. [10]

As a result, given that Plaintiff fails to challenge any of the facts set forth in the Commentary, regardless of how the questions it raises might be interpreted, they are classic examples of the expression of opinion based upon disclosed, unchallenged facts. *E.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("when a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment"); *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704 (D. Md. 2000) ("opinions based on disclosed facts are protected"); MTD Reply at 9-10. Indeed, the only evidence the Opposition provides about anything is a single-sentence claim by Plaintiff that "I deny that I have received any money or advantage from the government of the West Bank . . ." Abbas Decl. ¶ 4. Given that the Commentary never remotely suggests that the PA gave money directly to Plaintiff personally

---

[10] As Defendants noted in their Motion to Dismiss, not only is Rachid's allegation not about Plaintiff, the Commentary does not even assert it as a statement of fact about his father. Rather, it makes clear that Rachid only made these charges "with his back up against the wall" after Palestinian officials made similar charges about him, and the Commentary does not purport to endorse the merits of either position. MTD Reply at 7.

16

(the Commentary instead discusses his businesses), the first phrase of this carefully crafted sentence is largely irrelevant.  As to the second, it is unclear how Plaintiff could purport to speak for the entire "government of the West Bank," and in any event this self-serving, conclusory statement merely highlights why the questions raised in the Commentary are matters of opinion. For example, given that it is undisputed that Plaintiff regularly serves as his father's government's official envoy, *see* Mem. at 9-11, whether that affords him any "advantage" over his business competitors is inherently a matter of opinion.[11]

### 2.  Plaintiff is a Public Figure

Plaintiff concedes that there is a public controversy over corruption in the Palestinian Authority, but contends that Defendants are "bootstrapping" questions raised in the Commentary regarding Plaintiff's wealth and familial ties to that broader controversy.  *See* Opp. at 16. Essentially, Plaintiff accuses Dr. Schanzer of creating a controversy about him by testifying before Congress and writing the Commentary.  The record Defendants submitted in support of this motion, to which Plaintiff offers no response at all, demonstrates these contentions to be patently absurd.

At the outset, Plaintiff misstates the issue.  Defendants demonstrated that, as in *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980), there are actually two controversies into which Plaintiff has voluntarily injected himself, both of which establish that he is a limited purpose public figure for purposes of this case.  The broader controversy is one over corruption in the PA generally, and Plaintiff has injected himself into that by making public

---

[11] The only other evidence Plaintiff offers are materials discussing the investment climate in the West Bank and Gaza region, USAID oversight of the Palestinian Authority, and the Palestinian Investment Fund ("PIF").  None of them discusses Plaintiff or whether there is any relationship between his political lineage and his wealth.  *See, e.g.*, Adolfsen Decl. Ex. 11; Abbas Decl. ¶ 8.

statements defending the PA and denying that any corruption exists. *See id.* at 13-15. The second, more specific controversy is over Plaintiff's wealth and whether he has benefited from his familial ties. As to that controversy, the record indisputably shows that it goes back to the late 1990s, *see* Mem. 13 (citing articles discussing Abbas' wealth and his dual roles as government official and businessman), and further demonstrates that Plaintiff has actively used the press to respond to these questions for years, including regularly trumpeting his multiple defamation lawsuits in an effort to warn off other potential critics that question his wealth and familial ties – while not challenging the more flattering articles about his wealth. *See* Mem. at 16 (discussing Abbas' participation in these controversies). Plaintiff's Opposition entirely ignores this indisputable record. Having actively commented on these controversies for years, he "cannot complain that the very intensity of [his] advocacy also became part of the public debate." *Farah*, 863 F. Supp. 2d at 37 ("Those who speak with loud voices cannot be surprised if they become part of the story.").

In a further effort to muddy the waters, Plaintiff distorts even the circumstances surrounding Dr. Schanzer's testimony, which is protected and not part of his complaint. He contends that Dr. Schanzer gave testimony entitled "Chronic Kleptocracy – Corruption Within the Palestinian Political Establishment," suggesting that Dr. Schanzer created this controversy and that this title speaks to the point of view expressed in the Commentary. *See* Opp. at 20. Though none of that is relevant given that it is the Commentary, not Dr. Schanzer's testimony, whose meaning is at issue here, the Congressional Record shows that was the title that *Congress* gave to the entire hearing it held, not Dr. Schanzer's testimony. *See* Mem. at 18-19. He was simply one of several experts who were invited to testify at that hearing, as well as the prior Congressional hearing on the subject. Other people, including members of Congress, spoke

18

about Plaintiff's wealth at these hearings and questioned whether his lineage contributed to his wealth. *See* MTD Reply at 13. This further demonstrates that Plaintiff's wealth has long been a matter of public interest and/or controversy, and was not created by Dr. Schanzer. In short, Plaintiff is plainly a limited purpose public figure.

### 3.    Abbas Has Not Established that Defendants Acted With Fault.

Abbas has also failed to show that Defendants acted with the requisite degree of fault. "The standard of actual malice is a daunting one," *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), and here Plaintiff does not introduce any evidence of falsity, let alone knowledge of it. *See also Tavoulareas v. Piro*, 817 F.2d 762, 779 n.17 (D.C. Cir. 1987) ("this statement falls woefully short of the daunting requirements of actual malice."). Plaintiff has neither pled facts that would if proven establish fault, *see* Mem. at 27 , MTD Reply at 14-17, nor offered evidence here that could remotely demonstrate a likelihood of establishing actual malice, or even negligence. If anything, Plaintiff's "evidence" establishes exactly the opposite.

First, Plaintiff argues that Dr. Schanzer's employer, the Foundation for Defense of Democracies, is a "neo-con" organization that is critical of Palestinian governing factions, be it Hamas or President Abbas's Fatah. *See* Opp. 19; Adolfsen Decl. Exs. 3-6. While this assertion may suggest that Plaintiff is interested in using this defamation lawsuit as a tactic to engage in expensive ideological warfare with perceived critics of his father's regime, this is certainly not evidence of actual malice by Dr. Schanzer, and it says nothing about FP at all. If anything, this "evidence" suggests that Dr. Schanzer's employer advocates a point of view that is consistent with questions that Dr. Schanzer raised in the Commentary.

Turning more directly to Dr. Schanzer, Plaintiff suggests that he too is a persistent critic of the PA, as well as its rival Hamas, both in his book and in other articles. *See* Adolfsen Decl.

Exs. 2, 8-10.  Once again this "evidence" merely shows he consistently expressed what he believed, which is the opposite of actual malice.  And if the suggestion is that Dr. Schanzer holds pre-conceived opinions, that would plainly be insufficient to establish actual malice as a matter of law.  *E.g.*, *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 48 (D.D.C. 2002) (Any supposed "pre-existing agenda" is not indicative of actual malice, and this argument may therefore be summarily rejected."), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003); *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (finding insufficient evidence of actual malice where plaintiff alleged that magazine had "a preconceived story-line").

Plaintiff next turns even farther afield and argues that Dr. Schanzer criticized a sovereign wealth fund called the Palestinian Investment Fund ("PIF") in Congressional testimony in 2011, but then "soften[ed] his charges" the second time he testified before Congress after being threatened with litigation by the PIF.  Opp. 21.  As an initial matter, this has nothing to do with Plaintiff.  Indeed, Plaintiff affirmatively states that Dr. Schanzer's Congressional testimony about *him* was consistent both before and after the Commentary's publication.  *See* Opp. at 20; MTD Mem. at 30.

In any event, while this does show that Dr. Schanzer has unfortunately been subjected to other litigation threats in order to exercise his First Amendment rights, these assertions about PIF are neither correct nor evidence of actual malice by Dr. Schanzer with respect to any topic (and again, have nothing to do with FP).  If one reads the rest of the portion of Dr. Schanzer's 2012 testimony about PIF that Plaintiff cites, he not only continued to raise pointed questions about PIF and its operations, he pointed to new information he had learned since 2011 supporting that perspective.  Adolfsen Ex. 10 at 6 ("Finally, although PIF now claims to have ceased operations in Gaza after the terrorist group Hamas took over in 2011, I have received a report that senior

PIF representatives have established a presence in an elementary school there. . . .  But if PIF

maintains a presence in Hamas-controlled Gaza, it requires an explanation.").  If anything, Dr.

Schanzer's discussion of his meetings with PIF officials shows that he is willing to listen to his

critics, *see id.* ("[w]e have had several productive discussions about my findings, including one

with the fund's chief investment officer. . . "), which is the antithesis of actual malice.  *See, e.g.,*

*Parsi v. Daioleslam*, --- F. Supp. 2d ----, 2012 WL 4017720, at *10 (D.D.C. Sept. 13, 2012)

(defendant's sending subject of article a "lengthy, point-by-point response" to subject's

complaint about article is "the opposite evidence of actual malice").

   The same analysis applies to Plaintiff's contention that FP's "refusal" to publish a

retraction following Plaintiff's demands upon it is evidence of actual malice.  Opp. at 22.  As an

initial matter, even in circumstances where it has actually been established that a publisher made

a false, defamatory statement of fact, which is certainly not the case here, a refusal to print a

retraction would not be evidence of actual malice.  *See McFarlane v. Sheridan Square Press*, 91

F.3d 1501, 1515 (D.C. Cir. 1996) ("nor are we aware of any [authority], for the proposition that a

publisher may be liable for defamation because it fails to retract a statement upon which grave

doubt is cast after publication").  *See also McFarlane v. Esquire Magazine*, 74 F.3d at 1306

("[T]he question of actual malice [. . .] turns on [defendant's] subjective beliefs and purposes at

the time of publication."); *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 320-21 (D.D.C. 2011) ("Our

Circuit's precedent [. . . ] requires that actual malice by a *publisher* exist at the time of

publication.").

   In any event, no evidence of malice by FP (or Dr. Schanzer) could be gleaned from these

communications.  Rather, once again the record points entirely in the opposite direction.  It

shows that after Plaintiff's London counsel served a retraction demand on FP (copying Dr.

Schanzer) alleging thirteen supposed "untrue statements" in the Commentary, FP's in-house counsel responded by setting forth in detail why FP disputed that any of the statements could constitute defamation and why, based on the evidence provided to it to date, it saw no material falsity in any of the statements either. However, FP invited Plaintiff to provide it with any actual information substantiating any of the assertions made by his London lawyer, offered to correct anything in the Commentary that Plaintiff could demonstrate was even technically false regardless of whether it was legally actionable, and further invited Plaintiff to submit a full response to the Commentary for publication in FP.

In response, Plaintiff refused to provide anything at all, and instead filed this lawsuit making many of the same allegations. But in the face of a motion which once again not only invites, but now requires him to substantiate these claims, he has essentially abandoned all but one of them. Thus, Plaintiff has now twice made charges that numerous details in the Commentary are supposedly false, twice refused to submit any information to substantiate those accusations, and now even abandoned them when put to the test of litigation. This is certainly not evidence of any actual malice by either Defendant.

In sum, the only limited "evidence" that Plaintiff offers is either irrelevant or merely demonstrates the absence of actual malice; nor has Plaintiff provided any evidence that could even establish negligence. *See* MTD Reply at 14-17.

### 4.    Abbas Has Not Established That He Suffered Any Damages.

Finally, other than vague allegations that the Commentary subjected him to a risk of violent reprisals, *see* Abbas Decl. ¶ 9, Plaintiff offers no evidence of damages. Plaintiff is not entitled to presumed damages absent a showing of actual malice, which as discussed *supra*, he has not shown. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974) ("the States may not

permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."). Moreover, Plaintiff cannot hold defendants liable for a vague claim that the Commentary somehow exposes him to violence without showing that it "incit[ed] or produc[ed] imminent lawless action" or was "likely to incite or produce such action," a standard he clearly has not met. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("[T]he Constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe" even express "advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.").

Finally, given that there has been a controversy over this matter for almost fifteen years, including many articles in the media that have been far more critical of Plaintiff than the Commentary, the notion that Plaintiff has some sudden fear of reprisal based on a single opinion piece in FP strains credulity. In addition, Plaintiff's claims in this regard prove too much. His purported concern is that the "mere suggestion" of any impropriety could subject him to reprisals, Abbas Decl. ¶ 9, and specifically he is concerned that "FP's *opinions* reach an international audience." Opp. at 19 (emphasis added). Thus, Plaintiff's concerns would exist regardless of whether the Commentary is construed to be opinion or fact, and indeed suggests that Plaintiff is interested in using libel litigation to deter the expression of both.

Indeed, what Defendants respectfully suggest is most troubling is that Plaintiff's revised theories of defamatory meaning and actual malice now seems to focus almost exclusively on two things. First, they focus on exposing the identities of confidential Palestinian sources who are critical of his father's government. MTD Opp. at 2, 7 (alleging that his "new details" are "allegation by several unnamed Palestinians that critics" of Plaintiff's father allegedly fear

"retribution by PA security officers . . ."); *id.* at 3 ("the support for Defendants' libelous innuendo is nothing more than Mr. Schanzer's "whispered" discussions with several Palestinians"); *id.* at 11 ("The only "new details" in the article relate to the author's reporting on his conversations with "a former Palestinian advisor" and "several Palestinians during a research trip to Ramallah in 2011.").  His focus strongly suggests that if anyone genuinely has anything to fear, it would be those sources if Plaintiff were permitted to use the tools of discovery in the U.S. legal system to try to unmask them and deter any other critics of his father's regime from speaking to Dr. Schanzer and other commentators in the future.

Second, they focus heavily on attacking Dr. Schanzer's testimony before Congress, including even testimony about Palestinian institutions like PIF that have nothing to do with Plaintiff, but rather are closely associated with his father.  But Congressional testimony itself is absolutely privileged from defamation lawsuits.  *See, e.g.*, *Restatement (Second) of Torts* § 590A (absolute immunity for witness in legislative proceedings); *Banks v. Kramer*,  603 F. Supp. 2d 3, 11 (D.D.C. 2009) ("Congressional testimony, if related to the congressional proceeding, is absolutely privileged against defamation suits.").  Thus, Plaintiff appears to be trying to use this lawsuit as an improper vehicle to indirectly attack and punish Dr. Schanzer's exercise of this core First Amendment right, when the law proscribes him from challenging it directly.

In short, this type of defamation lawsuit is exactly what the District government had in mind when passed the Anti-SLAPP Act, and Defendants' special motion to dismiss should be granted.

## CONCLUSION

For each the foregoing reasons, Defendants respectfully request that this Court grant the

Special Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act, and dismiss this case with

prejudice.

Dated:   December 31, 2012                          Respectfully submitted,

By:   /s/ Kevin T. Baine                            By:   /s/ Nathan E. Siegel

WILLIAMS & CONNOLLY LLP                             LEVINE SULLIVAN KOCH & SCHULZ, LLP

Kevin T. Baine (Bar No. 238600)                     Nathan E. Siegel (Bar No. 446253)
Adam Tarosky (Bar No. 983920)                       Seth D. Berlin (Bar No. 433611)
Elise Borochoff (Bar No. 1006246)                   Shaina D. Jones (Bar No. 1002801)

725 Twelfth Street, NW                              1899 L Street, NW
Washington, DC 20005                                Suite 200
Telephone: (202) 434-5000                           Washington, DC  20036
Facsimile: (202) 434-5029                           Telephone: (202) 508-1100
                                                    Facsimile: (202) 861-9888
kbaine@wc.com
atarosky@wc.com                                     nsiegel@lskslaw.com
eborochoff@wc.com                                   sberlin@lskslaw.com
                                                    sjones@lskslaw.com

*Counsel for Defendant Foreign Policy*              *Counsel for Defendant Jonathan Schanzer*
*Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of December 2012, I served the foregoing

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**

**SPECIAL MOTION TO DISMISS PURSUANT TO THE D.C. ANTI-SLAPP ACT** via the

Court's CM/ECF system, upon:

> S. Dwight Stephens, Esq.
> Louis G. Adolfsen, Esq.
> Rania Shoukier, Esq.
> Michael F. Panayotou, Esq.
> MELITO & ADOLFSEN P.C.
> 233 Broadway, Suite 1010
> New York, New York 10279

> *Counsel for Plaintiff*

/s/ Nathan E. Siegel
 Nathan E. Siegel